nesses was necessarily for the jury to determine, and will have to be left to a jury, however many new trials may be ordered upon a reversal on the facts. The court can never take the question from the jury. Williams v. D., L. & W. R. R. Co., 81 App. Div. 444, 80 N. Y. Supp. 945.

We have patiently gone over the evidence, the charge of the court, and the briefs of counsel. The case has been submitted to three juries since the Court of Appeals settled the law of the case. The first jury disagreed; the second found for the plaintiff, and the trial court set aside the verdict; the third found for the plaintiff again, and this verdict is now here for review. The amount involved is not large—$1,000, besides interest and costs—and we do not think we should set aside the verdict as contrary to the evidence. If the question of fact were for our determination, we might arrive at a different conclusion than the jury did; but the jury has the duty of determining the facts, and the jury, and not the court, is to be satisfied of the correctness of the verdict. The court should not reverse and order a new trial unless there is a reasonable probability that the result would be changed by such new trial. The trial we are reviewing was had before a very fair, impartial justice, who submitted the question of fact to the jury in an unobjectionable way.

We think the verdict rendered should not be disturbed upon the facts. Upon the evidence, we think it was for the jury to say whether, in fact, there was loss of consciousness in the spells with which the assured was afflicted prior to the issue of the policy. The witnesses stated the facts as they observed them. Whether the insured became unconscious was an inference to be drawn from the facts stated. Such inference was for the jury, and not for the court.

We think there was no error committed by the court in the reception or rejection of evidence, or in the charge, calling for a reversal of the judgment and order. They should therefore be affirmed, with costs. All concur.

---

## PITKIN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1904.)

1. RAILROADS—PERSONS AT STATION—DEATH—NEGLIGENCE.

    Defendant railroad company maintained a stepping box at the side of its track, at a station, to enable passengers to board and alight from its trains. Plaintiff's intestate, a boy 13 years of age, of ordinary brightness, went to the station to meet his mother, who was on an incoming train; and, attracted by seeing her, he walked by the side of the slowly moving car, and, turning his face upward, did not see, and stumbled over the box, causing him to fall under the wheels, by which he received injuries from which he died. *Held*, that the maintenance of such box, under such circumstances, instead of use of removable stools, did not constitute negligence on the part of the railroad company.

2. SAME—DAMAGES—DEATH OF PERSON ENTITLED TO RECOVER—EFFECT.

    Code Civ. Proc. § 1902, provides that the personal representative of a decedent, who left a husband, wife, or next of kin, may maintain an action to recover damages for his wrongful death; section 1903 declares that the damages so recovered shall be for the benefit of decedent's husband, wife, or next of kin; and section 1904 provides that the damages so award-

ed may be a fair and just compensation for the pecuniary injuries result-
ing from decedent's death to the person or persons for whose benefit the
action is brought. *Held*, that where a decedent wrongfully killed left
surviving him his father, as his sole next of kin, who died before trial
of an action brought for the son's death, the damages recoverable were
limited to the pecuniary injuries sustained by the father between the
death of the son and his own death.

Appeal from Trial Term, Oswego County.

Action by Emma J. Pitkin, as administratrix of the estate of Fay Pit-
kin, deceased, against the New York Central & Hudson River Railroad
Company. From a judgment in favor of plaintiff for $1,971.72, and
from an order denying defendant's motion for a new trial on the
minutes, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
HISCOCK, and STOVER, JJ.

Thomas Burns, for appellant.
Frank C. Sargent, for respondent.

HISCOCK, J. This action was brought to recover damages alleged
to have been caused to the next of kin of Fay Pitkin through his negli-
gent killing by the defendant. We think that the judgment should be
reversed for the reasons that the plaintiff did not establish either
negligence upon the part of the defendant, or the right to recover
more than nominal damages as the result of the intestate's death, even
though wrongfully caused by said defendant.

The accident happened July 18, 1901, at defendant's station in the
village of Sackett's Harbor. It was caused by intestate's stumbling
over a stepping box placed by the side of one of defendant's tracks at
said station, and falling under the wheels of a passenger train which
was drawing into the station. Defendant's station house stood upon
its grounds, some distance from the street, and was approached there-
from by a plank walk or platform. Between this walk and the tracks
was an open space of some considerable width, filled in with gravel or
other material. Defendant kept in this space, and by the side of its
track, a movable wooden step or box, which is claimed by plaintiff's
counsel to have been between six and seven feet long, three or four feet
wide, and about six or seven inches high, and which was supplied for
the use and convenience of passengers in alighting from or entering the
cars. It was kept in about the same place, and it was customary to
so stop trains that it would be in the right location for use. Plaintiff's
intestate was a boy, 13 years of age, and, so far as appears, of at least
ordinary brightness and experience, and he had been at this station be-
fore the day in question. He came down to meet his mother, who was
arriving on one of the defendant's incoming trains, and, attracted by
seeing her or otherwise, he walked by the side of the slowly moving
car, and, turning his face upwards, did not see, and stumbled over the
box, and fell under the wheels. It was in the daytime, and there
was nothing whatever to obstruct his view of the box, unless tempo-
rarily some person may have got between him and it. It was close
enough in to the track so that part of it would come under the car, and
the train was just stopping at it as the boy fell. There was evidence

that at this time the defendant had commenced to use small stools for the purpose of assisting passengers to alight, and which were put down and taken up as occasion required, and that the use of a large step, such as the one in question, was at least not general.

We shall assume, for the purposes of this case, that the intestate was so properly at defendant's station that it owed to him the ordinary obligation to exercise reasonable care to maintain its premises in a reasonably safe condition. Giving plaintiff the benefit of this assumption, we still think that defendant did not violate this obligation by supplying and allowing to remain upon its premises the box complained of. It is somewhat difficult, in our view, to entirely separate the questions of the defendant's negligence and the intestate's contributory negligence; but, upon the consideration of all the facts, taken together, we think it was improper to allow the jury to say that the defendant, in the exercise of a reasonable care and caution, ought to have anticipated that a person coming to its station in broad daylight, and exercising proper care and observation, was liable to stumble over this box and fall under the car. It is conceded, as, of course, it must be, that it was entirely proper for defendant to furnish some sort of a step which would make it easier for passengers to get from the car step to the ground, or vice versa. This was not only proper, but commendable. The plaintiff, however, says that defendant ought to have used movable stools, which could be removed when the occasion for use had passed. Even if we regard the evidence as establishing that such stools had come into common use, we do not think that there was anything in such use which limited defendant to them, or prevented it from employing the other appliance, which for a long time had been maintained at this station. It was a perfectly simple contrivance, with nothing inherently dangerous about it. So far as appears, it was kept in about the same spot, and no one prior to this day had ever found danger or difficulty in either using or avoiding it. If some stranger, coming there in the nighttime, had tripped over it, a different question might have been presented. But we think there was nothing which should have indicated to or warned defendant that a person in the daytime would be injured by or as the result of it. The case is entirely different from those cited by plaintiff's counsel to sustain his right of recovery. In Ayres v. D., L. & W. R. R. Co., 158 N. Y. 254, 53 N. E. 22, a mailbag had been left upon the station platform. That was not its proper place, and it served no useful purpose by being there. In addition, the plaintiff, who was a stranger to the location, met his accident by stumbling over the bag in the darkness while he was properly upon the platform. In MacLennan v. Long Island R. R. Co., 20 Jones & S. 22, a box had been left upon the station platform. There was no legitimate reason for its being where it was, and plaintiff in this case, also, being a stranger, stumbled over it in the darkness as he was using the platform. The case at bar comes more within the principles of Dougherty v. Village of Horseheads, 159 N. Y. 154, 53 N. E. 799, and Robert v. Powell, 168 N. Y. 411, 61 N. E. 699, 55 L. R. A. 775, 85 Am. St. Rep. 673, and Hart v. Grennell, 122 N. Y. 371, 25 N. E. 354. Those actions fully establish the proposition that a defendant will not be held liable, as for negligence, in employing a stepping stone

Sup. Ct.) PITKIN V. NEW YORK CENT. & H. R. R. CO. 909

at the curb, or in utilizing a stone to protect his lawn, or in having in his store a truck, if such thing, even though a slight obstruction, is necessary and proper for the use to which it is employed, and is not of such a character as would lead a person, in the exercise of reasonable care and foresight, to anticipate any accident therefrom to a passer-by making reasonable use of his eyes and senses.

We pass to the second question. The intestate at the time of his death left, him surviving, as his only next of kin, his father. He also left a mother. Six months after the boy was killed, and before the action came on for trial, the father died. It is urged on behalf of the defendant that the father, as the next of kin, was the sole person for whose benefit were recoverable any damages resulting from the intestate's death; that the opportunity for such damages terminated at the father's death; and that, under the circumstances of this case, the damages which could have been sustained between the death of the boy and of the father could not be more than nominal. We believe that an examination of the statutes upon which must rest this right of action necessarily leads to the conclusion that defendant's contention is well founded. Section 1902 of the Code provides that the personal representatives of a deceased, who left a husband, wife, or next of kin, may "maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused." The damages recovered in such an action "are exclusively for the benefit of the decedent's husband or wife, and next of kin, and when they are collected they must be distributed by the plaintiff as if they were unbequeathed assets left in his hands after the payment of all debts." Id. § 1903. "The damages awarded to the plaintiff may be such a sum as the jury * * * deems to be a fair and just compensation for the pecuniary injuries, resulting, from the decedent's death, to the person or persons for whose benefit the action is brought." Id. § 1904. The right to these damages is a right of property, which accrues at the moment of the negligent killing, and at such moment becomes vested in the beneficiary, for whose benefit the action may be maintained. The right to such damages which thus accrues becomes an asset in the estate of the beneficiary designated by the statute, and the death of such beneficiary does not prevent or terminate a right of action to recover damages which have thus been by him suffered. Matter of Meekin v. Brooklyn H. R. R. Co., 164 N. Y. 145, 58 N. E. 50, 51 L. R. A. 235, 79 Am. St. Rep. 635.

We thus have it, under these provisions and principles, that upon the death of Fay Pitkin, if he was negligently killed by defendant, a right accrued to his administrators to bring an action to recover damages which had resulted from such death simply and solely to his father, who was his only next of kin. The statutory provisions which alone create this cause of action permit a recovery only for the person who, as the next of kin of the intestate at the moment he died, suffered damages as the result of such death. Those are the damages allowed and recoverable to the exclusion of any other elements or consideration whatever. And the proposition seems to us plain that in this case the jury were limited to the allowance of such damages as the father had suffered down to the time of his death, and were not entitled to

consider or think of anything else. It is conceded by the learned counsel for the respondent that, measured by such a rule as this, the damages allowed were excessive, and that the father, during the six months which elapsed between the death of his son and himself, could not have suffered more than nominal injury. It is suggested by the counsel, however, in his brief that "the damages to be recovered became fixed at the time of the death of plaintiff's intestate, and the subsequent death of the father did not alter the question." If this language should be construed as holding that the right to damages in behalf of the next of kin accrued and became fixed at the time of the death of plaintiff's intestate, we should, of course, have no difficulty in agreeing with it. But we are unable to agree with any construction which holds that at such moment the amount of damages to be recovered in behalf of the beneficiary became so fixed that it could not be altered by subsequent circumstances, like the death of the next of kin. It seems to us that a consideration of some of the elements which a jury are allowed to take into account in fixing damages in such a case as this will demonstrate in a familiar manner that the duration of the life of the next of kin is always a feature to be considered. In case of the death of a child the jury are entitled to take into account the fact that the father would be entitled to its earnings during minority, and that after majority such child might still continue to contribute to the support and comfort of the parent. The jury would be entitled to consider all the probable or even possible benefits which the parent might have derived from the infant if it had not died. The consideration of these pecuniary benefits which might have resulted from the life of the child, and of the damages which therefore flow from its death to the parent, must necessarily take into account the probable length of time during which the parent himself might live to enjoy these benefits. Ordinarily such parent is alive at the time of the trial, and the contingency of his death and of the resultant termination of all benefits which he might have derived from the child's life is so uncertain that any conclusions which a jury may reach in reference to such benefits are not subject to review and reversal. In this case, however, no element of uncertainty in this respect exists. The father was the next of kin, and solely entitled, as such, under the statute, to any damages which resulted from the death. He had died before the trial, and therefore there was ascertained the exact period during which he would have been entitled to the benefits of the life of the intestate. We see no way, under the statute, in which the jury could be allowed to measure such benefits by any such uncertain rule as would have been applicable in case the father had still been alive at the time of the trial, or in which the relationship to the intestate of other people, who were not his next of kin at the moment of death, can be made the basis of an additional recovery.

It may be suggested that a defendant which had negligently caused the death of one person could practically escape liability therefor if it should be guilty of still further acts of negligence, in immediately thereafter causing the death of the person who was the next of kin of the first intestate. This, of course, is an extreme illustration,

but we are unable to perceive any way in which it may properly lead us to seek to overrule absolute statutory provisions. The statutes, in creating this new cause of action, have seen fit, as we read them, to limit the damages recoverable to those sustained by the next of kin at the time of the death. They have not seen fit to take into account the possibility that by the speedy death of such next of kin the damages recoverable might be made nominal, or that if, upon the other hand, the next of kin might be credited with a probable long life, he might recover large damages, which, through his estate, might be passed over to other relatives. The other relatives of the intestate in this case are in no different legal condition than that which they would have occupied in case the father had been alive at the time of the trial. He then would have been entitled, if at all, to substantial damages, which would have been absolutely his, and no other member of the family of the original intestate would have had any interest therein, except the remote and possible one of gift or bequest from the father.

While the conclusions thus reached by us are not expressly stated in, we think they are fully warranted by the discussion in and principles of, Mundt v. Glockner, 26 App. Div. 123, 50 N. Y. Supp. 190; Lipp v. Otis Bros. & Co., 161 N. Y. 559, 56 N. E. 79; Matter of Meekin v. B. H. R. R. Co., 164 N. Y. 145, 58 N. E. 50, 51 L. R. A. 235, 79 Am. St. Rep. 635.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event, upon questions of law only; the facts having been examined, and no error found therein. All concur; McLENNAN, P. J., upon first ground stated in opinion.