LEONIE DOWLY, as Administratrix of the Estate of KAREN DOWLY, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27783.)

Court of Claims, February 26, 1947.

*John F. X. Sheridan* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Mortimer H. Michaels* of counsel), for defendant.

Lambiase, J.   Claimant's decedent, Karen Dowly, was admitted on November 21, 1942, to the Creedmoor State Hospital, an institution owned, operated, and maintained by the State of New York for the detention, care and treatment of mentally ill persons.   His mental condition was diagnosed as dementia praecox hebephrenic type.   On February 28, 1943, he died as the result of injuries sustained by him at the hands of another patient on February 21, 1943, while he was being cared for in a ward of said hospital used exclusively for disturbed and violent patients.

The claim herein is based upon the alleged negligence of the State in relation (1) to the control, management, and operation of said hospital in the particulars therein set forth; and (2) to the failure of the State to afford the decedent herein proper medical care and attention following the injuries sustained by him which resulted in his death. It also alleges, among other things, the following: "7. The items of damage or injuries claimed to have been sustained and the total sum claimed *for personal suffering* and for *injuries causing death,* is Fifteen thousand ($15,000.00) Dollars." (Emphasis supplied.)

The proof adduced upon the trial offered by claimant and admitted without objection on the part of the State establishes, in our opinion, facts sufficient to constitute two causes of action against the State, viz., one for wrongful death of the decedent under section 130 of the Decedent Estate Law, and the other for conscious pain and suffering under sections 119 and 120 of the Decedent Estate Law.

We are mindful of the fact that the complaint, or, in this case, the claim, in setting forth an action for wrongful death, should contain the usual allegations to establish a cause of action for the wrongful act complained of, either of negligence or of some other tort relied on, and in addition should allege the due appointment of the executor or administrator of the decedent. It should also set forth the fact that the decedent left surviving a husband, wife, or next of kin (*Lucas* v. *New York Central R. R. Co.,* 21 Barb. 245; *Safford* v. *Drew,* 3 Duer 627); and it is usual to name them, though not essential. (*Keller* v. *New York Central R. R. Co.,* 24 How. Prac. 172.) It is not necessary to refer to the statute, but it should allege all the facts necessary to show that the case is one within its language. (*Brown* v. *Harmon,* 21 Barb. 508; 5 Wait on New York Practice [4th ed.], p. 567.) It is true that the claim herein does not separately set up the two afore-mentioned causes of action, and that some of the allegations usually found in, and essential to, an action for wrongful death are lacking.

However, no question or issue was raised by the State as to the sufficiency of the pleadings herein; no objection was made that any of the proof adduced upon the trial was not within the pleadings; no motion was made by the State for a dismissal of the claim on the grounds that it failed to state facts sufficient to constitute a cause of action; and no point has been made or urged raising the question of the sufficiency of the pleadings herein anywhere in the brief submitted herein by the State.

It is well established that the specific ground that the evidence offered is not within the pleadings must be stated, for the reason that the pleader may be given an opportunity to avoid the variance, if possible, by an amendment. Where this objection is not specifically interposed, it cannot be raised upon appeal. (*Voorhees* v. *Burchard,* 55 N. Y. 98; *Cole* v. *Bickelhaupt,* 64 App. Div. 6.) It is a familiar rule that where the cause is tried on both sides without regard to the technical form of the action as disclosed by the complaint, and no question is raised at the trial, or objection made to that course, the successful party will be deemed to have recovered upon the facts shown and not strictly upon his pleading. (*Gillies* v. *Manhattan Beach Improvement Co.,* 147 N. Y. 420, 424, citing *Belknap* v. *Sealey,* 14 N. Y. 143, the latter case being distinguished on another point, not involved herein, in *Callmeyer* v. *Mayor of City of N. Y.,* 83 N. Y. 116, 120.) The defendant, from the course of the trial, and because of his failure to raise the question in some form, must be deemed to have assented to, or at least waived, the variance, if any. (*Gillies* v. *Manhattan Beach Improvement Co., supra.*)

The motions made by the State at the end of the claimant's case and at the end of the entire case upon the ground that claimant had failed to make out a cause of action " referred of course to the facts as proved, and did not call for a decision upon the question whether there was in the language of the Code, ' a failure of proof ' of the special case made by the complaint. In short, the ground taken was, that upon the facts as they were proved the law would give no relief." (*Belknap* v. *Sealey,* 14 N. Y. 143, 147, *supra.*)

We have deemed it proper, if not entirely necessary, in the interest of an orderly consideration and disposition of this case, to discuss the matter of the variance between the claim as filed herein and the proof made thereunder at the trial.

We consider now the allegations of negligence as contained in the claim, and we discuss them in the order in which we have, for the purposes of convenience, hereinbefore enumerated them. As to subdivision (1): The evidence discloses that at the time that decedent sustained the injuries resulting in his death, he was one of sixty patients who were being accommodated and cared for in two wards known as S-9 and S-10 in building S of said hospital. Each of these wards had a corridor down the middle with ten single rooms off one side thereof and four small rooms, designated as " cubicles " in the testimony, off the other

side each containing five beds. Each ward provided accommodations for thirty patients. These wards were reserved and used for so-called " disturbed " and " violent " patients, and were being operated for such use as one unit at all times herein mentioned. Decedent was classified in the hospital as a " disturbed " patient, but not necessarily a violent one. In fact, the record discloses no evidence of violence or participation in acts of violence on the part of the decedent herein at any time prior to the incident hereinafter detailed in which he received his fatal injuries.

On February 21, 1943, at 4:00 P.M. of that day, three attendants had come to work and were in charge of the afore-mentioned wards. At about 5:20 P.M. that day, one of said attendants sustained a dislocated shoulder, necessitating his leaving the ward and going to the sick bay, thereby leaving two attendants in charge of the two wards. Shortly after 5:40 P.M. of that day while one of these two attendants was standing in the doorway of a clothes closet supervising the operation of the patients changing into their night clothes, he heard a commotion in one of the cubicles, which cubicle was located about forty feet from where he was standing. He immediately ran to that point and found the decedent, Dowly, on the floor with one Gilbert Hamilton, another patient, on top of him punching and kicking him. Both decedent and Hamilton " were swinging arms and fists ". Gilbert Hamilton had been a patient in the hospital for a long time, and was known to have committed previous assaults. In fact, he was known by the authorities of the hospital to be a so-called " assaultive " patient.

As a result of this incident or altercation between the decedent and said Hamilton, decedent sustained what was ultimately determined to be a fracture of the sixth, seventh, eighth, and eleventh ribs, a ruptured transverse colon, and a ruptured transverse mesocolon, from which injuries and the complications arising therefrom he subsequently died.

The State is duty bound to furnish inmates of its hospitals for mental defectives with every reasonable precaution to protect them from injury, either self-inflicted or otherwise. It was the duty of the State to use reasonable care and diligence not only in treating, but in safeguarding the deceased, measured by his capacity to provide for his own safety. (*Martindale* v. *State of New York,* 244 App. Div. 877, affd. 269 N. Y. 554; *Shattuck* v. *State of New York,* 166 Misc. 271, affd. 254 App. Div. 926; *Root* v. *State of New York,* 180 Misc. 205; *Van Patter* v.

*Towns Hospital,* 246 N. Y. 646; *Gould* v. *State of New York,* 181 Misc. 884; *Wilcove* v. *State of New York,* 146 Misc. 87.) It thus became the clear duty of the State to protect the claimant against injury due to the negligence of those acting in its behalf.

It has been held that insufficiency of attendants in a State mental institution is an act of negligence on the part of the State. (*Curley* v. *State of New York,* 148 Misc. 336, 339, affd. *sub. nom. Luke* v. *State of New York,* 253 App. Div. 783; *Weihs* v. *State of New York,* 267 App. Div. 233; *Martindale* v. *State of New York, supra; Dimitroff* v. *State of New York,* 171 Misc. 635.) This point is too well settled by the decisions of this court and of other courts to dwell at greater length upon it.

We conclude that under the conditions prevailing at the time that claimant's decedent sustained his fatal injuries, two attendants were not sufficient to care for sixty known disturbed and violent patients. We would arrive at the same conclusion if we were to consider each of these wards separately and as having one attendant for each thirty patients for, in our opinion, that too would be insufficient. Then too, it has been held that mentally ill persons with a propensity to assault people should have special attention and supervision, and we find that no such special attention or supervision was given to the patient, Gilbert Hamilton, until after the death of the decedent herein when he was isolated. (*Curley* v. *State of New York, supra.*) We hold the State negligent, therefore, under this specification of negligence. We hold further that the decedent herein under the circumstances cannot be charged with contributory negligence. We are cognizant of the difficulties which were created by wartime conditions with reference to the obtaining of proper and sufficient personnel for institutions of this kind. However, that fact is available only in explanation of, but not as an answer valid in law to, the charges of the claimant herein.

As to subdivision (2): On February 22, 1943, in the morning of that day, claimant's decedent was examined by a hospital staff physician who had been notified of the incident. He concluded, from his examination of the decedent, that the decedent had received no apparent injuries. This same staff physician examined decedent on February 23, 24, and 25, 1943, with no change in the diagnosis that he had made upon the first examination. On February 23, 1943, another staff physician also examined decedent. This latter physician detected the presence of some gas in decedent's abdomen, which said physician ascribed to indigestion or constipation. Upon the examination made on

February 24, 1943, decedent complained of pain in the left chest; and since he had also previously complained of pain in the abdomen, a diagnosis of probable diaphragmatic pleurisy on the left side was made. On the examination of February 25, 1943, it was found that there was a suggestion of crepitus over the left ribs where there was then some swelling and slight discoloration. X-ray pictures were taken February 25, 1943, and from them, the staff physician who had first examined decedent made a diagnosis of a fracture of the eleventh rib. On February 26th the hospital roentgenologist examined the X rays and reported that they disclosed fractures of the sixth, seventh, eighth and eleventh ribs; that they indicated that gas was present in the abdominal cavity, and he gave it as his conclusion that the gas was due to a ruptured viscus. Decedent was thereupon transferred to the hospital of the institution. While there and on February 27, 1943, he complained of severe pain in his side and on both sides of the chest. That same day at 12:30 P.M. a surgeon was called in, and decedent was operated upon. A ruptured viscus was found, the surgeon stating it as his opinion that the rupture was caused by trauma.

We are called upon to determine whether the State failed in its duty toward claimant's deceased in regard to the medical care and attention given to him following the injuries sustained by him. It will do no good and serve no useful purpose to prolong this discussion of the unfortunate circumstances surrounding this phase of this case.

We are not favorably impressed by the picture presented by the evidence. However, we may judge only upon credible legal evidence, and there is not sufficient proof in the record upon which we may support a finding that the medical care and treatment rendered to decedent following his injuries were not in accordance with established and proper medical practice. We are of the opinion that claimant has not sustained her burden of proof under this specification of negligence. We hold, therefore, that she has not established by a fair preponderance of the credible evidence that the State failed to afford decedent proper medical care and attention following his injuries.

We come now to the question of damages . Since we have determined that the proof herein establishes two distinct causes of action against the State which we have hereinbefore enumerated, and because of the difference in their legal status, we deal separately with them.

As to the damages for wrongful death: Decedent was forty-two years of age at the time of his death. He was married, and

left him surviving his wife and two infant children, one of the latter being three years of age and the other being four years of age. Except for his mental condition, decedent was in good physical condition just previous to his death. There is evidence that prior to his admission to the hospital, and more particularly between June, 1941, and October, 1942, decedent was employed as a porter, earning a maximum of $29 per week; and that between 1930 and 1940 he operated a fruit and vegetable store from which business he derived an income, which he turned over to his wife, testified to by the claimant as having been $60 to $70 a week, but testified to on behalf of the State as having been $20 per week net after the payment of operating expenses, for at least part of that time. The discrepancy in this testimony is obvious, but we are not too much concerned about it since the period affected by it is quite remote and because of our decision herein.

The assessment of damages in actions for wrongful death is governed by section 132 of the Decedent Estate Law. It is provided therein that the amount of damages recoverable may be such sum as the court deems to be fair and just compensation for the pecuniary injuries resulting from the decedent's death to the person or persons, in this case, decedent's wife and two children, for whose benefit the action is brought. It provides also that in addition to any other lawful element of the damages recoverable, the reasonable expenses of medical aid, nursing and attention incident to the injuries causing death paid by the decedent or by a person entitled to the whole or a distributive share of the moneys recoverable or for the payment of which such decedent or person is personally responsible, and the reasonable funeral expenses of the decedent, also shall be deemed proper elements of damage. The precise question in this case, therefore, under this cause of action for wrongful death, is what were the pecuniary benefits to his wife and children in the continuance in life of the decedent under all existing circumstances? (*Thomas* v. *Utica & Black River R. R. Co.*, 6 N. Y. Civ. Pro. Rep. 353, affd. 34 Hun 626; *Arnold* v. *State of New York*, 163 App. Div. 253; *Dimitroff* v. *State of New York*, 171 Misc. 635, *supra*; *Gaccione* v. *State of New York*, 173 Misc. 367.) The gist of the matter is that the measure of damages must be confined to the reasonable expectation of a pecuniary loss.

The medical testimony herein supports the finding that it would not have been possible for claimant's decedent, had he lived, to have recovered from his mental ailment of dementia

praecox hebephrenic type to such an extent that he would have been able to leave the hospital, return to his family, and to the work that he had been performing before entering the hospital, or, in fact, to engage in any gainful work at all. The record indicates that decedent's mental illness demonstrates itself in a progressive mental deterioration; that patients with the hebephrenic type of dementia praecox very rarely improve to the extent that they can adjust themselves to a home or a community situation; that if they do show improvement in behaviour to the extent that they may perhaps go home, they generally are a liability to their family, to the community, and to themselves. We are, therefore, constrained to hold that it would not have been possible for claimant's decedent, had he lived, to have recovered from his mental ailment, and to have returned to gainful employment.

While claimant has proved facts entitling her to a recovery, she has, however, proved no pecuniary damage within the meaning of section 130 of the Decedent Estate Law. Under these circumstances and pursuant to adjudicated cases, we are, therefore, limited in the amount that we may award for the death of claimant's decedent to the proved amount of the funeral expenses herein. (*Grasso* v. *State of New York,* 289 N. Y. 552; *St. Pierre* v. *State of New York,* 33 N. Y. S. 2d 151, affd. 267 App. Div. 795, motion for reargument granted 267 App. Div. 935, revd. and set aside 268 App. Div. 808, retried by Court of Claims [Claim No. 24924], same decision as in 33 N. Y. S. 2d 151; *Gould* v. *State of New York,* 181 Misc. 884, *supra; Dimitroff* v. *State of New York,* 173 Misc. 635, *supra; Castellano* v. *State of New York,* 53 N. Y. S. 2d 116; *Gaccione* v. *State of New York,* 173 Misc. 367, *supra.*) We distinguished the instant case from *Liubowsky* v. *State of New York* (260 App. Div. 416, 417, affd. 285 N. Y. 701) where the Court of Claims found that at the time of the death of the intestate, whose mental condition was that of general paresis, " his condition was such that it was possible for him to have recovered sufficiently to leave the hospital, resume his place in society and continue at the vocation in which he was engaged prior to his confinement". We are, therefore, in an accompanying decision making an award for the funeral expenses herein, together with interest thereon from February 28, 1943 (the date of the death of the decedent herein), through November 12, 1943, said latter date being six months from May 12, 1943, the date of claimant's appointment as administratrix herein, said date, May 12, 1943, being hereby

determined as the date of the accrual of the cause of action herein (*Crapo* v. *City of Syracuse*, 183 N. Y. 395, reargument denied 184 N. Y. 561; *Matter of Meng*, 227 N. Y. 264, 227 N. Y. 689), and from April 14, 1944, the date when the claim herein was duly filed, to the date of the entry of judgment, no interest being allowed from the 13th day of November, 1943, to the 13th day of April, 1944. (Court of Claims Act, § 19, subd. 1; L. 1939, ch. 860; *Sutherland* v. *State of New York*, 188 Misc. 953.)

As to the damages for conscious pain and suffering: We are satisfied that despite decedent's mental condition, from the very nature of his injuries, he felt and experienced pain and suffering. There is evidence in the record that he complained of pain. Medical science knows that mentally ill patients can receive painful stimulation by accident or by injury. They may not be able, because of their mental condition, to express themselves with reference to it the same as persons of normal mentality. There can be no doubt that the injuries sustained by claimant would, from their very nature, cause much pain and suffering; and that a person of normal mentality, had he suffered the injuries, would have been most uncomfortable and in pain immediately, and would have been most articulate about it.

Decedent lay in bed from February 21, 1943, to the date of his death on February 28, 1943, with the terrible injuries which he had sustained, conscious at all times and for at least part of the time in sheet restraint. It is always difficult to assess damages, but it is more so to evaluate damages for intangibles such as pain and suffering. No standard or rule is available by which pain can be accurately measured in terms of its monetary equivalent, as each case necessarily sets its own standard. Certain injuries are almost invariably associated with pain and suffering, in which event the presence of pain may properly be inferred from the injury itself, with little or no direct evidence in support thereof, unless there is affirmative evidence of facts and circumstances ruling out such pain and suffering.

The proof herein satisfies us that claimant is entitled to recover for the conscious pain and suffering of the decedent before his death. (Decedent Estate Law, §§ 119, 120; *Johnsen* v. *State of New York*, 176 Misc. 347, 349; *Gallachicco* v. *State of New York*, 43 N. Y. S. 2d 439, 442.) We are, therefore, making an award in an accompanying decision in an amount which we feel adequately compensates claimant herein for the conscious pain and suffering of decedent. These damages

recovered for conscious pain and suffering form part of the estate of the deceased, do not draw interest, and under the statute must be awarded by separate verdict, report or decision. (Decedent Estate Law, §§ 119, 120.)

We were requested by the claimant to take judicial notice of the fact that following the death of decedent, a Moreland Commission was appointed to investigate the conditions at the Creedmoor State Hospital. Upon this request, decision was reserved by us until this time. We decline to take judicial notice of the same, assuming such to be the fact; and we reserve an exception to the claimant by reason thereof.

We deny the motions made by the State at the conclusion of claimant's case, and at the conclusion of the entire case, for a dismissal, upon all the grounds in said motions mentioned, upon which decision was reserved, and we reserve an exception to the State in each instance.