VERA LIDDIE, as Administratrix of the Estate of ALLEN A. LIDDIE, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28168.)

Court of Claims, November 29, 1947.

*Rollin A. Fancher* and *Kenneth T. Johnson* for claimant.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* and *Joseph A. Drago* of counsel), for defendant.

Ryan, J. Claimant, as administratrix, sues to recover damages for the death of her husband, Allen A. Liddie, who suicided, July 11, 1945, while an inmate of Gowanda State Hospital. By his case history, by his previous suicidal attempts, first, while on parole at home and, later, while at the institution, the State of New York, its officers and employees had ample warning of their patient's propensities. The issue of negligence turns upon the question of whether or not reasonable care required the hospital authorities to watch Liddie more closely than they did. His diagnosis was psychoneurosis neurasthenia which a psychiatrist defined as " a type of functional mental disorder as differentiated from organic, in that there were no organic features for the basis of his mental difficulty. It was characterized by worry, emotional tension, a variety of physical complaints for which there was no adequate basis in his physical condition." For such afflictions, recognized treatments are occupational therapies and a certain amount of freedom to encourage the patient and to restore his confidence in himself. After a period of time in the hospital, and after the administration of shock treatments, Liddie was allowed certain privileges. He was first given a companion honor card and, after a time, a single honor card. While on single parole, on October 21, 1944, Liddie escaped and attempted suicide by slashing his wrists with a razor blade obtained surreptitiously from the institution barber shop. Thereupon his parole was revoked.

Certain significant entries in the hospital records are important, viz.: " January 3, 1945. He was given a companion parole of the grounds today. He will be watched very closely." " March 8, 1945. Has been in the hospital for some period of time. He has had several trials at home but has not been able to make a satisfactory adjustment * * *. It appears that he will have to be hospitalized indefinitely. * * * He has a companion parole on the grounds but should be allowed out only with trustworthy reliable patients. Is today transferred from Ward 25 to Ward 7."

Sometime between March 8, 1945, and July 11, 1945, Liddie was given a single parole. The date is not disclosed by any testimony or by any documentary evidence. Doctor Allexsaht, in charge of Ward 7 when Liddie escaped, testified upon examination before trial: " We thought he was getting better." And, upon the trial, he testified that his supervision of Liddie " was mostly a custodial care while he was there because he had had his treatment (shock therapy) and he was improving at that time. That is what we thought."

If we adopt Doctor Allexsaht's view it may be said that good therapy was practiced in giving Liddie the freedom, and the responsibility, of the single honor card. If there was good therapy, wherein was the State of New York negligent? If there was no negligence the claimant cannot recover. However, the Attorney-General has formally requested a finding that "Liddie's prognosis was poor". That is the language of Doctor Bohn, Clinical Director of Psychiatry, at the institution. He finds support for his opinion in the fact that Liddie "had had treatment (shock therapy) four times, and his improvement was not sustained on any one of those occasions." This was contrary to his experience in shock treatment of cases of psychoneurosis.

We are convinced, upon the whole record in this case, that the fair preponderance of the evidence justifies the adoption of the Attorney-General's request. We find that Liddie's prognosis was poor, that he would not have recovered his mental health, would not have been released from the institution and would not have resumed his place in society. Upon such findings we must hold that the hospital employees failed in their duty to Liddie and failed to exercise reasonable care when they allowed him, in the period of time following March 8, 1945, to go about on single parole. They failed also in vigilance which would have prevented his departure from the institution grounds and would have denied him the opportunity to carry out his repeated threats to destroy himself.

Except for a possible cause of action for conscious pain and suffering of a decedent, the authorities at present hold that the only award which can be made to his administratrix, in a case where there is no prospect that, if he had lived, he would have been released from the institution, is the amount of funeral expenses incurred. (*Grasso* v. *State of New York,* 289 N. Y. 552; *Dimitroff* v. *State of New York,* 171 Misc. 635; *Tabor* v. *State of New York,* 186 Misc. 736.) In this instance, although counsel in his brief and requests-to-find asks for damages for conscious pain and suffering, no such cause of action was pleaded, no amendment of the pleading was proposed and no proof to support an award on that basis was offered. Such request is denied.

However, this case is unusual in that although Liddie would not, in all probability, have been restored to health and usefulness there is proof in the record that by his death the persons for whose benefit this action was brought have suffered a pecuniary loss. It appears that in 1930, while employed by a

cleaning company, Liddie had sustained a severe and permanent injury to his back and that at the time he was committed to Gowanda State Hospital he was drawing workmen's compensation at the rate of $16.04 per week based upon a finding of permanent total disability for all industrial purposes. He was still drawing such compensation at the time of his death and would have drawn that amount, according to the records of the Workmen's Compensation Board, as long as he lived. Moreover, it appears that Gowanda State Hospital required no payments for Liddie's care and subsistence, under the Mental Hygiene Law, the financial agent for the State having assented to the check being turned over to Mrs. Liddie as long as her husband continued in the hospital. Liddie was forty-six years of age when he died and his life expectancy, according to the American Experience Tables of Mortality, was 23.80 years. Claimant's counsel argues that the award herein should be at least $16.04 multiplied by fifty-two weeks multiplied by 23.80 years and that the provisions of section 1333 of the Civil Practice Act prohibit its reduction below the resultant sum. It appears, however, that section 1333 of the Civil Practice Act is part of article 80-A entitled "Valuing Interests in Real Property"; that said article was added to the Civil Practice Act by chapter 848 of the Laws of 1947, effective April 14, 1947; that said act provided: "§ 4. Nothing in this act contained shall affect any action or proceeding pending at the time this act shall take effect" and that this litigation was then pending. Furthermore, assuming that we could properly avail ourselves of the provisions of article 80-A, particularly section 1335, and apply to the superintendent of insurance for an actuarial computation, it does not appear that the result thereof would be the sum which counsel has arrived at by multiplication of certain factors, as aforesaid, which sum he asserts is $20,211.44. It is unlikely that it would be that sum.

We know of no new formula prescribed for the triers of fact to follow in arriving at their verdict for the pecuniary loss sustained in an action for causing the death of a decedent. The theory that a plaintiff was entitled to recover the sum that would produce the income that a decedent had been earning at the time of his death for a period that, for a man of his age, he could be expected to live, was long ago rejected by the courts. (*Hinsdale* v. *New York, N. H. & H. R. R. Co.;* 81 App. Div. 617 [1903].) Evidence of the present worth of the gross amount the deceased would have earned had he lived the time specified in the tables was held to be misleading. (*Mix* v. *Ham-*

*burg-American Steamship Co.,* 85 App. Div. 475 [1903].) In cases where the decedent was receiving a pension for military service, it has been held proper to consider his age, character, condition in life and earning capacity. (*Wagner* v. *Clausen & Son Brewing Co.,* 146 App. Div. 70 [1911].) And also the kind of man that decedent was and the habits he had. (*Lindsay* v. *Sperry,* 244 App. Div. 860 [1935].)

While we may properly consider the compensation payments, claimant's damages cannot be computed by any mathematical formula. (*Tryon* v. *Willbank,* 234 App. Div. 335 [1932].) And it is also proper to consider the age of the wife, the relations between husband and wife and their habits of life, and the age, sex and conditions surrounding the next of kin. (*Sider* v. *General Electric Co.,* 238 N. Y. 64 [1924]; *Wilkinson* v. *Boehm,* 231 App. Div. 295 [1931].) We may also be mindful of the present-day devaluation of the dollar. (*Burtman* v. *State of New York,* 188 Misc. 153.) May we forget that its diminished purchasing power affects each taxpayer who contributes to an award as well as the successful litigant? In all events we must use our own good sense, experience and discretion, as a jury would. (*Oddo* v. *Paterson Bridge Co.,* 219 App. Div. 518 [1927].)

Following these well-settled authorities and taking into consideration the various elements disclosed by the record of the trial of this claim we arrive at the sum of $10,000 as the amount of recovery herein to which claimant is entitled by section 132 of the Decedent Estate Law, upon our finding of negligence herein. To this sum must be added the amount of the funeral expenses, $352, and interest from July 11, 1945. Decision accordingly.