Ethel R. LANGE, as Administratrix of the Goods, Chattels and Credits of Stanley Lange, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 6402.

United States District Court
N. D. New York.

Jan. 12, 1960.

James C. Steenbergh, Athens, N. Y., John J. Scully, Albany, N. Y., of counsel, for plaintiff.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., Timothy F. O'Brien, Asst. U. S. Atty., Troy, N. Y., of counsel, for defendant.

JAMES T. FOLEY, District Judge.

■■■ This action under the Federal Tort Claims Act arises from an unfortunate occurrence that took place on December 28, 1954, at the Veterans' Administration Hospital, Albany, New York. On that date, Stanley Lange, the twenty-two year old son of the plaintiff Administratrix, jumped from a sixth floor window at the hospital to his instantaneous death. He had been admitted only a few days previous, on December 22, 1954, to the Neuro Psychiatric Service of such government hospital suffering from an acute mental disorder. There was little contest at the trial and none in the briefing by the Government as to the apparent responsibility of the Government through its employees for the happening of the accident on the day in question. The evidence showed that human error to which we are all prone allowed the leap to death. Shortly after his admission, a psychiatrist at the hospital, after examining and interviewing the decedent, had diagnosed suicidal tendencies and suicide precautions were ordered to keep him safe. In the exercise of reasonable care, with this notice, the jump should have been anticipated, and the fact he was unattended and alone for the shortest period of time is enough to establish lack of due care on the part of the government employees and liability for the death. Contributory negligence could not be found on the part of Stanley Lange because of his mental condition. See United States v. Gray, 10 Cir., 199 F.2d 239.

■■■ The issue of liability is simple, but the amount of money damages to be awarded is complex. The amount of recovery is governed by Section 132 of the Decedent Estate Law, New York, which provides for fair and just compensation for the pecuniary injuries. The certainty in the settled law of New York is that such estimate and award involves the appraisal of many uncertainties. Such money damages for the next of kin, although restricted to actual pecuniary loss, are necessarily indefinite, prospective, contingent and even speculative. There are no definite guides for the estimate, and in the ordinary situation there can be little approach to accuracy. Pitkin v. New York Central & H. R. R. R. Co., 94 App.Div. 31, 87 N.Y.S. 906; Lockwood v. New York L. E. & W. R. R. Co., 98 N.Y. 523, 525; Keenan v. Brooklyn City R. R. Co., 145 N.Y. 348, 40 N.E. 15; Dimitroff v. State of New York, 171 Misc. 635, 13 N.Y.S.2d 458; Clark, New York Law of Damages, Vol. 2, pgs. 912–989. The measurement here is more complicated because we have the onset of a serious mental dis-

turbance not yet fully diagnosed or as yet treated at the time of death. Uncertainty as to the resumption of normal life and return to work if death had not occurred is compounded by such fact; only divine perception could foretell with accuracy, but the forecast must be made under the evidence presented. If there be possibility and probability of recovery from the mental illness, fair and just compensation may be awarded (St. Pierre v. State of New York, 268 App.Div. 808, 48 N. Y.S.2d 613; Hirsh v. State of New York, 18 Misc.2d 360, 183 N.Y.S.2d 175); if the evidence is not convincing as to cure and recovery to a point where a person could resume his place in the world outside of an institution and earn his livelihood, the pecuniary loss would be held to a minimum. Stevens v. State of New York, 196 Misc. 712, 714, 92 N.Y.S.2d 732.

A review of the evidence from my rough notes persuades me there is sufficient present to favor the plaintiff as to the possibility and probability of mental and physical recovery to a substantial extent by her deceased son. Of course, there are many imponderables in the formulation of such judgment and it cannot be said there were not dark spots in the future of the decedent in relation to his mental condition. However, Dr. Holt, a psychiatrist of the Veterans' Administration, who had the immediate and personal contact with the decedent, did testify she hoped by electric shock treatment to improve him so he could go back to his civilian life and work, although she stated he could not be completely cured. Dr. Wolfe, a psychiatrist of tremendous practical and theoretical experience in this field, at the time of the trial Acting Superintendent of Matteawan State Hospital, New York, was quite certain from his review of the history and hospital records that all symptoms were favorable to recovery, and that the schizophrenic reaction suffered by the decedent was definitely curable. He was candid enough to admit that by cure he meant social recovery, a return to normal type of living and limited ability to hold jobs, and did not mean that every remnant of abnormality would be wiped out. He would not rule out the possibility of recurrences, but from his review he predicted an early discharge for the decedent after the use of shock treatment and the new drugs now being prescribed for mental patients. He disagreed with the impression of the Veterans' Administration psychiatric staff that the decedent was suffering from paranoid schizophrenia. I have given the Identical Twin theory consideration because it has general scientific recognition, and in the federal courts we are not as restrictive as the State courts and are inclined to receive evidence that has rational bearing upon the problem at issue. F.R.Civ.Proc. 43 (a), 28 U.S.C.A.; United States v. Apuzzo, 2 Cir., 245 F.2d 416, 420–421; Mutual Life Insurance Co. of New York v. Frost, 1 Cir., 164 F.2d 542–547; United States v. Werner, 2 Cir., 160 F.2d 438–443; People v. Williams, 6 N.Y.2d 18, 26–27, 187 N.Y.S.2d 750, 159 N.E. 2d 549. Hindsight should also be as helpful to a medical opinion as it is to ordinary persons who look back to decide whether or not their past judgments were right or wrong. But I do think that Dr. Wolfe made valid, convincing and intelligent distinctions as to the prognosis for decedent as compared to that of his identical twin Denver, and I am willing to accept them as allowable because the theory, as all medical opinion, does not have to be accepted as an absolute one. The other factors I consider as a layman for hope of reasonable cure is that the decedent was very young at the time of death, served in combat in Korea, made a good adjustment in the military service and was discharged as Sergeant.

Weighing these contingencies, speculations and uncertainties as they pertain to the prospective life of Stanley Lange, it is my finding that he would have recovered his mental and physical health to such extent that he would have contributed an average of approximate-

ly $21 per week to his mother during an overall fourteen-year period during their lives. Fair and just compensation for her pecuniary injury and loss, considering the fact he was an adult child, and allocating one-third of the contribution to his own benefit, and considering the present cash value of the money on hand, the award is fixed at the sum of $10,000. O'Connor v. United States, 2 Cir., 269 F.2d 578.

My findings of fact are contained above. My conclusions of law are that the defendant, by its employees, was negligent and careless and the decedent was free from contributory negligence. A fair and just amount of compensatory damages for the pecuniary injury and loss is $10,000. The attorney for the plaintiff is allowed the maximum amount of 20% of the amount awarded (28 U.S.C.A. § 2678). Judgment in favor of the plaintiff shall enter accordingly, and it is

So ordered. See Matteson v. United States, 2 Cir., 240 F.2d 517.