Edward Goodell, J.
The question presented for consideration here is whether a verdict should be set aside and a new trial granted.
The jury awarded a verdict to Grover Monroe, Jr., for $500, and a verdict to Wayne Monroe for $7,000, for injuries they sustained in an accident that occurred on October 14, 1965 while they were passengers in an automobile driven by their father (Grover C. Monroe). At the time of the accident Grover was 6 and Wayne was 16 years old. Counsel for the defendants moved to set aside the verdict in favor of Wayne Monroe on the ground that it was excessive and against the weight of credible evidence.
The principal injury claimed to have been suffered by Wayne was a fracture of the nose near the bridge with certain sequelae as a result of that injury, namely bleeding, change in the shape of the nose, and narrowing of one of the nasal openings resulting in interference with the normal passage of mucous. The fracture healed, but it was the claim of the plaintiff that the sequelae are permanent in nature. The other claimed injuries were not consequential and were temporary in nature.
*464 The issue relating to the injury to Wayne’s nose was sharply contested. It is reasonable to conclude, therefore, that the jury’s verdict was based on its determination that Wayne’s nose was fractured and that all or some of the sequelae are permanent in nature.
I do not find that this determination is against the weight of evidence. The question here is whether the verdict was excessive.
Despite my reluctance to disturb the verdict of a jury, particularly in the instance of an infant plaintiff, it is my view that the amount of the verdict is disproportionate to the severity of the injury as disclosed by the record in this case.
While verdicts in other cases cannot be used as precise guides to the appropriate amount of an award in this case because of the inevitable differences in the facts and in the circumstances bearing upon each case, prior verdicts are helpful to the extent that they suggest permissible areas of evaluation for particular types of injury. (Mullady v. Brooklyn Hgts. R. R. Co., 65 App. Div. 549, 551 and Melish v. New York Cons. R. R. Co., 108 Misc. 291, 293.)
Counsel for the plaintiff and the defendant have submitted to me instances of verdicts in cases decided in other jurisdictions as well as New York involving nasal injuries. I have limited my consideration to the New York cases because, it seems to me, the verdict of other jurisdictions may be based on standards of value that are different from those of New York and therefore may add another element of disparity to the variations of fact and circumstance that normally distinguish cases, regardless of the jurisdiction in which they arise.
The following are the New York cases I have examined, commencing with the most recent of them, involving instances in which nasal injury was either the principal injury or a principal injury:
1. Czirer v. New York State Thruway Auth. (22 Misc 2d 678) Court of Claims, nonjury, decided 1960, $4,500 plus $410.15 for hospital and medical expenses.
2. Hinkel v. R. H. Macy, Inc. (201 N. Y. S. 2d 211) Supreme Court, N. Y. County, nonjury, decided 1960, $3,500 to plaintiff plus $500 to plaintiff’s husband.
3. Gurecki v. State of New York (18 Misc 2d 527) Court of Claims, nonjury, decided 1959, $4,000.
4. Beavers v. Calloway (61 N. Y. S. 2d 804, affd. 271 App. Div. 820) nonjury, decided 1946, $3,000.
*465 5. Ranelli v. Society of N. Y. Hosp. (49 N. Y. S. 2d 898 [Sup. Ct., Queens County, 1944]) nonjury verdict for $2,500, reduced by Appellate Division (269 App. Div. 906 [1945]) to $1,500.
As I have remarked, prior decisions provide suggestions as to the permissible range of evaluation of damage rather than exact guidance, because of the differences of fact and circumstance affecting each case. One of these circumstances, affecting the consideration of prior verdicts, is the date of decision, because the cost of living and the consequent purchasing power of money are variables that change materially with the passage of time.
There is a substantial body of case law in other jurisdictions in support of the proposition that ‘ ‘ Where an award of damages for personal injuries is to be reduced as excessive, any change in the cost of living or in the purchasing power of money will be considered in fixing the amount of the remittitur.” (Ann. 12 ALR 2d 611, 628).
That premise was adopted in Melish v. New York Cons. R. R. Co. (108 Misc. 291, supra) decided in 1919. There, a well-known New York clergyman recovered a verdict of $48,000 for personal injuries. The trial court, in connection with its reduction of the verdict to $30,000, made this comment: ‘ ‘ There must, however, at this period of time be a consideration of the purchasing power of the dollar. The diminished extent to which money will go is a factor that cannot be ignored. Hence, changed conditions in that respect demand a changed standard. Had this verdict been rendered five years ago, I doubt whether it would be questioned by the prevailing litigant that the result was out of all proportion and reason.”
(In Gale v. New York Cent. & Hudson R. R. Co., 13 Hun 1, affd. without opinion, 76 N. Y. 594; Rosen v. Sterling Symphony, 193 Misc. 12; and Roeder v. Erie R. R. Co., 164 N. Y. S. 167, motions to set aside verdicts as excessive were denied on this ground. See, also, Burtman v. State of New York, 188 Misc. 153 and Liddie v. State of New York, 190 Misc. 347, in which the purchasing power of money was considered by the Court of Claims in its determination of awards.)
Application of the rule followed by these cases is warranted by the sound reason that “ compensation means compensation in value ” and “ the value of money lies not in what it is but what it will buy. ’ ’ (Ann. 12 ALR 2d 611, 621).
There has been a very marked change in the cost of living and the purchasing power of the dollar since the making of the decisions in the five numbered cases cited above.
*466 The determination in the earliest of those cases was made during the period of 1944 to 1945 and in the latest of them in 1960.
The Federal Bureau of Labor Statistics reports that as of May 19, 1969, there has been an increase in the cost of living for the entire country of 25.6% over the base period of 1957-1959 and an increase of 29.6% in the cost of living in New York over the same base period. (“ New York ” in this analysis, it should be noted, covers New York City, the four counties of Nassau, Rockland, Suffolk and Westchester, and eight counties in Northeastern New Jersey.)
The Federal Bureau of Labor Statistics also reports that between April, 1945 and April, 1969, the cost of living in the United States and in New York more than doubled, namely 103.9% for the United States and 104.2% for New York.
If the foregoing percentage increases in the cost of living for New York were to be applied to the results reached in the cases cited above, those determinations would be increased as follows:
1. Czirer v. New York State Thruway Auth. (supra) 1960, $4,500 by 29.6% to $6,832.
2. Hinkel v. R. H. Macy, Inc. (supra) 1960 — $3,500 by 29.6% to $4,536.
3. Gurecki v. State of New York (supra) 1959 — $4,000 by 29.6% to $5,184.
4. Beavers v. Calloway (supra) 1946 — $3,000 by 104.2% to $6,126.
5. Ranelli v. Society of N. Y. Hosp. (supra) 194-1945— $1,500 by 104.2% to $3,063.
Again it should be emphasized here, that neither the verdicts of prior cases nor the percentage increases in the cost of living are relied upon as precise mathematical tools for the determination of a reasonable result in this case. They are referred to as indices of reasonable limits between which variation is possible.
Based on my consideration of the testimony relative to the severity of the injury and the diminished purchasing power of the dollar, I am constrained to reach the conclusion that the verdict in Wayne’s favor should be reduced from $7,000 to $5,000.
Accordingly, the defendants ’ motion for a new trial is granted unless the plaintiff shall stipulate to reduce the verdict from $7,000 to $5,000.