ELAINE ZAJACZKOWSKI, by SYLVESTER ZAJACZKOWSKI, Her Guardian ad Litem, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28179.)

Court of Claims, June 24, 1947.

*Wallace J. Stakel* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Harold S. Coyne* of counsel), for defendant.

LOUNSBERRY, J. This claimant is an infant who at the age of six years was admitted to the Newark State School, a State operated institution for the care of mentally deficient children. She was there diagnosed as an imbecile, of the type known as Mongoloid, with a mental age of two and one-half years. About eight months later, on May 18, 1945, the claimant was injured at the school under the following circumstances: The claimant and about sixty-five other children of various ages, all of them mentally deficient in various respects and degrees, were housed

in a building known as "Wilbur Cottage". At the particular time under consideration, they were gathered in the day room under the charge of two attendants, neither of whom had had any special training as a nurse or otherwise for this type of duty. The children were being taken to a toilet room about twenty feet from the day room in groups of three or four, the procedure being that one of the attendants would take such a group to the toilet room and leave it there while returning for another group. Thus, there occurred an interval during which the children in the toilet room were not under the direct observation of either attendant.

In the toilet room was a steam radiator, covered with a metal mesh or grate, and connected to a lead-in pipe shielded with asbestos and a metal sheathing. This pipe was connected with a valve operated by a metal wheel located about a foot above the floor and not shielded. The evidence shows that the valve was always open and that the metal wheel would become hot.

Shortly after the attendant left the claimant and three other girls in the toilet room, one of the children cried out that the claimant had been burned. Upon investigation, an attendant found her lying near the radiator with a burn mark on her upper right leg. As nearly as can be ascertained, she had been pushed against the exposed valve and wheel by one of the other children. -

No physician saw the child that day, but a nurse gave first aid treatment. An examination by a staff doctor the next day revealed an irregular burn above the knee, extending about half way up the thigh, which was partially first degree, partially second degree and partially third degree. She was placed in the hospital operated by the school and remained there for a period of two and one-half months. During this period recurrence of infection was noted from time to time, and on July 8th it was discovered that the child was picking at the scar and thus reinfecting the wound. It may be noted that Mongoloids have a peculiarly dry, tender skin and have a tendency to pick at it, a fact known to the officials of the institution. A tie-jacket was then applied to prevent such activity, and thereafter healing proceeded normally. Subsequent examination showed no disturbance of function, although there had been a moderate waste of muscle. There is no permanent injury, except that the claimant does have an ugly scar, very dense and elevated, covering an area above five inches by about two and one-half to three inches. This could be removed by skin grafting but the procedure would be protracted and expensive.

It is well established, of course, that the State is under a duty to take every reasonable precaution to protect the patients in its various institutions from injury, self-inflicted or otherwise. The degree of care to be observed is measured by the patient's physical and mental ills and deficiencies as known to the officers and employees of the institution. (*Shattuck* v. *State of New York*, 166 Misc. 271, aff'd. 254 App. Div. 926; *Weihs* v. *State of New York*, 267 App. Div. 233.)

Application of these principles to the present case reveals some deficiencies in the care observed toward this claimant, which, taken together, spell out negligence on the part of the State. In the first place, two attendants, neither with special training, are insufficient to care for some sixty-six mentally deficient and irresponsible children. (*Martindale* v. *State of New York*, 269 N. Y. 554; *Dimitroff* v. *State of New York*, 171 Misc. 635; *Tabor* v. *State of New York*, 186 Misc. 736; *Luke* v. *State of New York*, 253 App. Div. 783.)

In the second place, we deem the practice of leaving a group of children unattended in the toilet room for even a short time as improper. The State urges that neither a greater number of attendants nor an attendant stationed in the toilet room could have prevented this particular accident, but this is purely speculative. The presence of an attendant in the toilet room would have had a restraining effect on the activities of the children, and would at least have constituted a reasonable effort on the part of the State to prevent trouble.

In the third place, the failure to shield the valve and valve wheel exposed the patients to danger. The State shows that no similar accident had occurred, and pleads that it, therefore, had no notice of the potential danger, but it is significant that the rest of the radiator was guarded. The State evidently realized that the hot radiator constituted a danger, and, therefore, it should have also realized that the exposed valve and wheel constituted a like danger. It has been shown that the claimant was not of sufficient mental capacity to appreciate this danger, and the situation was the same with respect to many, at least, of the other patients.

In the fourth place, the State at least displayed a distinct lack of imagination in failing to take earlier precautions to prevent reinfection of the wound. Recurrences of the infection were noted, and the tendency among Mongoloids to pick at themselves was well known, and, yet, nothing was done until after fifty days to prevent the claimant from tampering with the burn.

From the foregoing considerations, we conclude that the State was negligent toward this claimant; that the injury to the claimant resulted from such negligence; and that the State must respond in damages. We also conclude that there was no contributory negligence on the part of the claimant for the simple reason that she did not have sufficient understanding to appreciate her danger. (*Gaccione* v. *State of New York,* 173 Misc. 367.)

This leaves only the question of the amount of damage sustained. From the testimony it is clear that a Mongoloid deteriorates rather than improves, and has a relatively short life expectancy. Obviously, a Mongoloid with a mental age of two and one-half years can never be a useful member of society, will have no earning capacity, and can be of no financial benefit to her parents or other relatives. There is no permanent injury, except an ugly scar, which, being above the knee, is not unduly prominent or disfiguring. On the other hand, the record establishes that a Mongoloid suffers pain as much as a normal person, and this claimant must have suffered severe pain for a period and considerable discomfort during confinement to the hospital. Taking all of these elements into consideration, we conclude that the claimant is entitled to an award for pain and suffering in the amount of $1,500.

Proposed findings of fact and conclusions of law were submitted by the parties, but will not be considered. It is well settled that where the trial court has rendered an opinion in writing setting forth the essential facts, the court is not required to pass upon proposed findings of fact and conclusions of law. (*Wise & Co.* v. *Doubleday, Doran & Co.,* 60 N. Y. S. 2d 719.)

The opinion herein will be considered the decision.

Let judgment be entered accordingly.