Richard S. Heller, J.
This claim, originally brought for the claimant by Ms guardian, is now tried as above entitled since Stanley Foster has been relieved of any disability that existed at the time of the appointment of the guardian.
The claim is for injuries suffered on July 19, 1949, while the claimant was an inmate of Edwards Colony, a part of the Syracuse State School which was a school for mentally defective children who could be helped by training to be useful citizens.
Edwards Colony was a farm training site for boys 16 years of age or over who were assigned tasks according to their ability and inclination. The claimant had progressed to the point where he was driving a team of horses in Ms daily work.
After dinner on the day of the accident, the claimant was sent with another inmate known as Mickey to bed down the horses for the night. After doing their chores the boys had a forbidden cigarette behind the barn. After this, they returned to the barn where Mickey informed Stanley that he had found a paint brush and was going to clean it. Then, and the court adopts this as the fact, Mickey took a discarded tomato can over to a gasoline pump located about 50 feet from the barn and drained a small amount of g*asoline from the hose. He then returned to the barn and started to clean the brush and, for some reason or other, decided to strike a match and light the gasoline. As the gasoline ignited Stanley ran from the barn but not before Mickey picked up the can and threw the flaming gasoline on Stanley’s left arm. The claimant suffered severe burns as a result of the episode.
*427 The court has adopted or refused, as indicated by the markings, the findings and conclusions of the claimant and the State. These contain a multitude of facts which lead to the ultimate conclusion of the court and while most are important they will not be repeated at length in this decision.
The question to be solved here is whether the State of New York exercised the precautions necessary for the protection of the committed children that were consonant with the avowed purpose of rehabilitation and responsibility.
The supervision of the 35 to 40 children was left to the supervisor from 6:00 a.m. to 2:30 p.m. and to the assistant from 2:30 p.m. for an additional eight hours. The wife of the supervisor cooked the meals but did not engage in any supervision outside the kitchen.
The duties of the attendant at the time of the accident were to supervise the boys at work in the barn, the boys at the playground which was some distance from the barn, and the boys in the house who were listening to the radio or engaged in cleaning up the residential quarters. It was impossilbe for one man to give any reasonable supervision to any one group. It is claimed by the State that only slight supervision of any of the boys was the best way to develop self-assurance and self-respect, yet these boys were required to undress in the cellar at night and their clothes were locked up to prevent the boys from running away. They went to bed and were without any further supervision until their clothes were returned to them at 6:00 a.m.
The inmates were allowed to smoke after each meal and the cigarettes and matches were furnished by the supervisor on duty. It was well known that the boys were always finding cigarettes, cigarette butts, matches and other material which were concealed from the supervisors. Frequent search parties and shakedowns were had to find these forbidden articles, yet these methods did not stop the habit of collecting everything and anything which might be considered a treasure to these boys.
The work required of the boys at the barn included the feeding and watering of the horses, the preparation of the stalls with straw for the night, the procuring of hay for each animal and a final cleanup of the barn floor. This might be easy work for an ordinary 16-year-old boy, but to place a boy with a physical age of 16 and a mental age of 6 years 6 months in this position knowing his innate love of matches and knowing that a short distance away was a gasoline hose known to retain some gasoline unless properly drained seems to indicate to the court a lack of sufficient personnel to properly protect the inmates entrusted to the State.
*428 Edwards Colony owed a duty to the inmates of every reasonable care to protect them from injury, self-inflicted or otherwise. The degree of care should be measured by the physical and mental ailments of the inmates as known to the State. (Shattuck v. State of New York, 166 Misc. 271, affd. 254 App. Div. 926; Weihs v. State of New York, 40 N. Y. S. 2d 283, affd. 267 App. Div. 233; Zeigler v. State of New York, 179 Misc. 827; Jones v. State of New York, 267 App. Div. 254; Reyes v. State of New York, 9 Misc 2d 808.)
The supervisor and his assistant did what they could to properly attend the boys but the failure of the State to furnish adequate records, attendants and supervision under all of the circumstances constitutes negligence. (Martindale v. State of New York, 244 App. Div. 877, affd. 269 N. Y. 554; Curley v. State of New York, 148 Misc. 336; Gould v. State of New York, 181 Misc. 884; Arnold v. State of New York, 8 A D 2d 931.)
The claimant was free from negligence which contributed to this accident.
As a result of the negligence of the State, claimant has suffered personal injuries, some of which are permanent, all of which are listed in the findings.
Claimant is entitled to an award in the sum of $14,000, which amount covers past, present and future damages.
The foregoing constitutes the written and signed decision of the court upon which judgment may be entered.