Paul C. Reuss, J.
Syracuse State School is an institution maintained by the State of New York for the care and treatment of mental defectives. (Mental Hygiene Law, § 120.)
Edwards Colony, a part of such school, is one of three or four colonies devoted to the training of boys in general farm work according to their abilities and capabilities with a view to their eventual departure from the school to a place in the community. Boys, who have attained the age of 16 years and have completed their academic training and show aptitude and liking for farm training, are assigned to this colony.
The principal building of Edwards Colony consisted of a basement, a first floor and a second floor, the upper portion was used as a dormitory. The first floor was devoted to a classroom, sitting room, kitchen, dining room and family quarters. The basement contained toilets, showers, washbowls, furnaces, and some storage area. The maximum capacity of the facility was 39 or 40 boys. Personnel consisted of a supervisor, an assistant, who was the wife of the supervisor, but whose duties, limited to cooking, did not extend beyond the confines of the kitchen, and an attendant also assigned to duty at the colony.
The claimant, Edward Doty, was born February 3, 1937. In 1945, at the age of eight, he was admitted as a patient at Syracuse State School. At this time his mental age was six years four months. Thereafter, various tests indicated his mental age, in April, 1956, was somewhere between eight years and ten months and nine years two months. His I. Q. was somewhere between 52 and 77 depending upon the type of test administered to him. At this time and for some period prior thereto, Doty was assigned to Edwards Colony receiving instruction in simple farming tasks'. In addition to such instruction, the patients *332 were usually assigned certain duties. This claimant was detailed asa“ vegetable boy ”, i.e. a patient whose duties were to prepare vegetables for cooking.
At approximately 11:00 a.m. on the morning of April 22, 1956, the claimant was directed by the supervisor of Edwards Colony to go to the basement and peel potatoes. He was furnished a knife for this task. While so engaged he was “ bothered” by a patient who pinched his cheek and probably pulled his hair. Claimant at first warned his tormentor who persisted in molesting him. The claimant became angry, threw the paring knife he was using at his tormentor who, in turn, threw it back at the claimant striking him in the vicinity of his left eye inflicting two wounds. One, in the eyeball, resulted in the loss of the claimant’s left eye, the other was a three-quarter inch cut approximately one inch above the left eye.
Claimant initially applied a towel to Ms eye. The supervisor, upon being informed of the injury, inspected it and applied alcohol to the wound one inch above the injured eye. Initially the wounds were not painful, but subsequently, when the claimant’s pain increased his injuries were examined by Drs. Watts and Lohaza, the assistant director and a member of the staff of the school, respectively. Claimant was subsequently brought to the office of Dr. David F. Gillette at 4:45 p.m., April 22, 1956. He was hospitalized from April 22 to April 30, 1956 and treated for his injuries. After further treatment at Dr. Gillette’s office the injured optic was enucleated on May 24, 1956, at which time claimant was hospitalized for one week.
The second patient, hereinabove referred to and whom we shall hereinafter refer to as the assailant, was admitted to Syracuse State School on January 18, 1943 upon a judicial certification. At the time of such admission his chronological age was 11 years six months, his mental age six years ten months, his I. Q. 59. In November, 1952, his chronological age was 21 years, five months, his mental age seven years, six months, his I. Q. on one type of test 59, on another 50. In February, 1953, he struck another patient in the arm with a knife causing a slight wound. On two other earlier occasions he was sent to Cottage A, a disciplinary site maintained by Syracuse State School. His offense was molesting other patients. On other occasions prior to the incident on which this claim is based, he 11 bothered ” or molested fellow patients. He admitted that he had made threats to kill certain patients but claimed “ he did not mean it
The claimant on one occasion complained to the supervisor of the assailant’s acts towards him. The supervisor, on the other hand, claimed that he had received no complaints about the *333 assailant’s conduct. He further testified that while a patient’s record generally accompanies such patient to the colony he did not believe it was his duty to familiarize himself with the assailant’s background and had not done so.
On the day in question, Edwards Colony was in the sole charge of the supervisor whose duties included various unrelated tasks incidental to the supervision of the 27 patients then in residence. On that day he was on duty from 5:45 a.m. to 2:30 p.m. at which time he was relieved by the attendant, who remained on duty until 10:00 p.m.
At the time the claimant was injured, the supervisor was on the first floor of the colony discussing the personal problem of another patient. The 27 patients were generally “ scattered ”, some were in the fields working, some performing household tasks, some were at liberty. These latter were permitted to go into the dining room, sitting room and basement but were not allowed to go outside, however, the doors of the building were open.
Syracuse State School is classified as an open institution and it is claimed that only slight supervision was the best method of developing self-assurance and respect. However, it was the rule at Edwards Colony to lock up the boys’ clothes at night to prevent their escape. Knives, farm tools and similar potentially dangerous instruments were kept locked away and the boys were usually supervised when using such equipment.
Three of the patients at the school testified at the trial; they were escorted to and from the courtroom by officers of the school and were constantly under such supervision while waiting to be called as witnesses. These precautions indicate an awareness, on the part of the hospital authorities, of the proclivities of patients whose mental age seldom exceeds eight years. The tempers of such patients flare quickly. Their basic emotions are not subject to the restraint which comes from mental maturity, yet these patients have the physical strength of mature men. In their hand a knife or any weapon is a potential danger to themselves and other inmates.
It is clearly the duty of the school to afford its patients every reasonable care to protect them from injury, either self-inflicted or otherwise. The degree of such care is measured by the patient’s physical and mental ailments as known to the hospital officials, physicians and employees. (Scolavino v. State of New York, 187 Misc. 253, mod. on other grounds 271 App. Div. 618, affd. 297 N. Y. 460; Martindale v. State of New York, 244 App. Div. 877, affd. 269 N. Y. 554; Shattuck v. State of New York, 166 Misc. 271, affd. 254 App. Div. 926.)
*334 It has been held that insufficiency of attendants in a State mental institution is an act of negligence on the part of the State. (Dowly v. State of New York, 190 Misc. 16; Curley v. State of New York, 148 Misc. 336, affd. sub nom. Luke v. State of New York, 253 App. Div. 783; Weihs v. State of New York, 267 App. Div. 233.)
We conclude that under the conditions prevailing at the time the claimant sustained his injuries that one supervisor was not sufficient to care for 27 patients whose average mental age was eight years, especially when certain of such patients were assigned tasks requiring the use of knives and other patients, such as the assailant, whose prior history indicated a tendency to molest fellow patients, were assigned to the colony. Such negligence on the part of the State of New York was the proximate cause of the claimant’s injuries. (Cf. Foster v. State of New York, 26 Misc. 2d 426.)
We find the claimant free from any negligence contributing to his injuries.
The delay in seeking medical treatment for the claimant from approximately 11:30 a.m. to approximately 3:45 p.m. on the date of the incident, in no way affected the end result. Earlier treatment would not have saved the claimant’s left eye.
George Doty was appointed guardian ad litem for Edward Doty by order of the Honorable Charles T. Major, Judge of the Court of Claims, dated February 18,1958. The claim herein was filed by such guardian ad litem in the office of the Clerk of the Court of Claims and served upon the Attorney-General on July 5, 1958. Upon the trial it appeared the claimant had been relieved of any disability. The title of the claim was thereupon amended to indicate the claim is continued by Edward Doty.
In assessing damages we note that since the occurrence of the incident, which has given rise to this claim, Edward Doty has been released from Syracuse State School. On October 29, 1958 he was placed in convalescent care and according to Dr. Watts, the fine assistant director of the school, claimant is expected to be completely discharged from the supervision of the school authority in late 1961 or early 1962. It is only fair to say that through the general care provided by the State, this unhappy young man will soon be able to take a place in the world outside of an institution for mental defectives or subject to the supervision outside the walls of that institution and its authorities. Despite such progress this claimant has suffered a serious and permanent injury which will be an additional handicap for the rest of his natural life. He also suffered considerable pain from the time of his original injury until his wound ultimately healed *335 following the removal of his eye. However, his medical expenses have been paid by the State thus eliminating this item of damage from our consideration.
We find the sum of $30,000 will fairly compensate the claimant for his injuries and direct judgment against the State of New York in that amount. The foregoing constitutes the written and signed decision of the court upon which judgment may be entered. (Civ. Prac. Act, § 440.)