Alexander Del Giorno, J.
This is a claim hy Robert Dunning, as administrator, to recover damages for the death of his daughter, Grace Dunning, caused by the alleged negligence of the State.
On December 13, 1957, Grace Dunning, seven years of age, was admitted to Willowbrook State School, an institution for the care of mentally deficient children. She had been declared mentally deficient by an order of the Supreme Court, Kings County. Her father testified that at the time of her admission to the school, she was able to speak only a few words, was unable to walk or use her arms and legs and was incapable of feeding herself. He testified further that she had to be held upright while beiiíg fed or given a bottle; if she were to be fed while lying down, she would gag. At that time, his wife demonstrated to the doctor and the house mother the manner in which the child was to be fed. The latter indicated her understanding of the situation.
The mother of the child testified that before her daughter’s admission to the school, she had been obliged to feed the child in an upright position, either on her lap or in a high chair, feeding her first and then either giving her liquid from a glass with a spoon or giving her a bottle. If the child were laid down by the mother to drink the contents of the bottle, she would commence choking. The child also vomited often after eating. She testified that she instructed the hospital authorities as to how to feed her daughter and apprised them of the fact that the child would choke if she were fed lying down. At about 7:30 a.m. on December 20,1957, while the child was being fed, she died.
In the examination before trial (claimant’s Exhibit 8), Dr. William Fleischer, supervising psychiatrist of the school, testi *1044 fied that on admission Grace was a severly retarded, spastic child who did not talk or walk or feed herself, not toilet-trained and in need of care and supervision in every way; that she was bowl fed with a spoon under the supervision of an attendant and a nurse; that he examined the child on December 19 her general condition was poor and he found that she had a history of regurgitation after eating; that in the course of her feeding, the child was lying on her back; that on December 20, she died, the autopsy record stating that the cause of death was caused by aspiration due to blocking of the major bronchi.
In the said examination, Mary Donohue, the attendant, testified that she fed, bathed and cleaned from 12 to 15 children in the admission ward, of whom Grace was one; that she went on duty there about 7 o’clock in the morning of December 20; that she fed this child first, giving her cooked farina formula from a soup bowl; that she had the child in her left arm and fed her with a small teaspoon; that she did not then or at any other time use a bottle in feeding the child; that she knew the child regurgitated after every meal, at which time she cleaned her and put her in the crib; that on the morning of December 20, as the witness was feeding her, the child held food in her mouth and then swallowed it, but started to regurgitate when put back in bed after feeding, at which time the attendant sat with her, put her in her arms and then laid her in the crib, when she vomited and then threw herself back in the crib, giving no sign of choking; the attendant then called the nurse, who came with a doctor.
On the trial, Mrs. Donohue reiterated this testimony, except to add that after she fed the child, she also gave her milk and to state that when she put the child in the crib after eating, she put her in a sitting position. On cross-examination she testified that the mother of the child did not inform her that if the child were to be laid down after eating she would vomit, but stated that her admission report would show what was said. On this report (claimant’s Exhibit 7), it is to be noted that Mrs. Donohue wrote under date of December 14: “ Appetite poor — must be spoon-fed — must be laid down to be fed ”. She testified, however, that she knew that to lay the child down after feeding would be dangerous, and that the child could thereupon gag and choke. She denied ever saying that she gave the child a drink of water when she started to gag and choke; she denied also that she ever bottle-fed the child in the crib. The child was a poor eater and had lost weight.
The hospital report (claimant’s Exhibit 7), under date of December 20, signed by Dr. Fleischer, stated that while the *1045 attendant was giving the patient water to drink, she started to choke and gag and became pallid and limp with no respiratory movement. The doctor in charge concluded there must have been complete obstruction of the large bronchi causing immediate suffocation from aspiration of regurgitated food. Immediate resuscitation and suction of the patient’s throat and trachea, plus stimulation of its respiratory center by cardiorespiratory stimulants and artificial respiration proved unavailing and the child died.
The death certificate (claimant’s Exhibit 4) gave the cause of death as “ asphyxia from aspiration of ingested food, blocking major bronchi, following bottle feeding in crib.” This report is repeated in the hospital record of Dr. Fleischer.
The State has the duty of taking every reasonable precaution to protect the patients in its institutions from injury. The degree of care to be observed is measured by the patient’s physical and mental ills and deficiencies as known to the officers and employees of the institutions. (Zajaczkowski v. State of New York, 189 Misc. 299; Shattuck v. State of New York, 166 Misc. 271, affd. 254 App. Div. 926; Weihs v. State of New York, 267 App. Div. 233.)
The court is satisfied that the hospital authorities were fully aware of the method by which the child should be fed, that it would be dangerous for her to be fed or to be given a bottle to drink while she was lying down and that she was not to be laid down after feeding. The State was under the obligation to exercise a degree of care commensurate with this knowledge of the child’s propensities.
The testimony of the attendant in charge of the child indicates that she was aware of the manner in. which the child was to be fed and that she adhered to the instructions given to her by the parents in the presence of the doctor. She fed the child in her lap and afterward placed her in an upright position in the crib. When the child vomited and became ill, she immediately called the nurse and doctor. Her version of the occurrence is uncontroverted by any oral testimony. Although the hospital record states that the patient started to choke and gag as she was being given water, and the death certificate states the child was bottle-fed in her crib, the attendant’s testimony is that such was not actually the fact. But even if the child had been bottle-fed in the crib, there is nothing in the record to show that such procedure would be dangerous to the child, providing she was in an upright position. The mother of the child testified that she fed the child at home either on her lap or in a high chair.
*1046 With respect to that portion of the hospital record herein-above referred to wherein the attendant noted that the child must be laid down to be fed, the court finds either that the attendant erred in writing down what she had been instructed to do, or in any event that in caring for the child she did not follow such notation but rather the instructions of the parents. There was no testimony on the trial in reference specifically to this entry.
The burden of proof to establish causal negligence is upon the claimant. (Hirsh v. State of New York, 8 N Y 2d 125; Morris v. Lake Shore & Mich. So. Ry. Co., 148 N. Y. 182.)
The court is distressed that this unfortunate incident occurred, but on the record is constrained to hold that all reasonable and necessary steps were taken by the State in its care of the infant and that the State was not guilty of negligence.
The motion heretofore made by the State on which decision was reserved is hereby granted, and the claim is dismissed. This constitutes the decision of the court in accordance with section 440 of the Civil Practice Act.