Alexander Del Giorno, J.
This is a claim to recover damages for the death of claimant’s intestate, alleged to have been caused by the negligence of the State. Upon the trial, with the consent of the State, the court permitted the amendment of the claim so as to include a cause of action for conscious pain and suffering.
The decedent, Eldora Cress, was admitted voluntarily to Utica State Hospital on February 3, 1927, when she was 19 years of age. At that time the hospital record indicates she was “ seelusive, quite emotional, cried, wrung her hands and appeared to be in a state of panic.” She expressed no definite delusional ideas of a persecutory nature. On May 7, 1927, a position was obtained for her at Camp Healthmore and she was paroled. She was returned from parole on May 20, 1927, and again paroled on August 16, 1927 to take a position at Onondaga County Orphan Asylum, but because of “ peculiar ” behavior was returned from parole on August 25, 1927. Following treatment administered to her, she showed some improvement.
On September 11,1928, decedent attempted to escape and was sent to another ward. On December 20, 1928 she gave notice that she wished to leave the hospital as a voluntary patient and, in view of her mother’s refusal to commit her, was discharged on January 6, 1929. The diagnosis of her mental condition was “Schizophrenia, Hebephrenic Type.” Her condition on discharge was designated as “ improved.”
She was readmitted to the hospital on July 12, 1929, with a history during her time at home of restlessness, wandering, assaulting her mother and an attempt at suicide with iodine. *175 The mental examination at the hospital disclosed a “vague persecutory trend.” On the ward she was “ hallucinated in the auditory sphere.” On September 12, 1929 she escaped but was returned to the hospital. On November 13,1929 she drank marking ink in a suicide attempt. According to the hospital record, this was the last time she attempted suicide during her confinement in the hospital. A later request in 1930 by her mother for parole was disapproved, but in June, 1932, a two-week visit home was approved. While at home she became disturbed and it became necessary to return her to the hospital. Subsequently she showed improvement and, on October 14, 1934 was paroled in the custody of her mother.
She was returned to the hospital on December 27, 1934, expressing the wish to die. Following her return, she was restless, irritable and hallucinated. Her general condition remained the same from that time on. In 1944 she showed a diabetic condition and was treated therefor during the following years of her confinement in the hospital. Since July, 1956 she had resided in Ward IF, Medical-Surgical Service, one of the quieter wards, and caused no harm to herself or others.
In January, 1960 the decedent was ambulatory and required minimal care and supervision. In that month and year Ward IF became a fully implemented open ward, in accordance with the modern open-door policy adopted by the hospital.
On July 29, 1960, about noontime, decedent left the hospital without consent. The record reveals that on August 9, 1960 a social worker attached to the hospital visited the home of a friend of decedent, but found the friend and her husband were deceased. In July, 1961, the case was reviewed at a convalescent care meeting and it was decided to continue the patient on leave without consent. On August 10, 1962, she was discharged from leave without consent, nothing further having been heard concerning her whereabouts. Prior to August 21, 1962, the New York State Bureau of Criminal Investigation found a skeleton outside the city limits of Utica, near the Mohawk River, and, by use of the dental charts of the hospital furnished to the bureau on August 21,1962 upon its request, it identified the skeleton as that of decedent.
The death certificate indicated that the skeleton had been found on July 17,1962, and attributed the death to an accident resulting in probable drowning.
Dr. Oswald J. McKendree, Assistant Administrative Director of the hospital, testified that in view of the length of time that had elapsed since her last suicide attempt, decedent’s suicidal tendencies had abated. He stated that when she disappeared the *176 hospital grounds were searched for her and that the police were then notified.
The Police Department sent out a teletype to the State Police and other Police Departments.
Mrs. Sophie Grlista, head nurse in the ward, testified that she knew decedent and was aware that she received insulin once daily and was administered tranquilizers three times per day. She missed decedent at the lunch hour, after she had given her a tranquilizer. She testified that decedent during 1959 and 1960 had not been overactive or troublesome, and that she had never seen her assaultive.
At the close of claimant’s case, the State moved to dismiss upon the ground that claimant had not introduced evidence sufficient to establish a prima facie case, decision thereon being reserved. The State then rested, renewing the motion. Decision was reserved.
The State has a duty to take every reasonable precaution to protect the patients in its various institutions from injury, self-inflicted or otherwise. (Hirsh v. State of New York, 8 N Y 2d 125; Martindale v. State of New York, 269 N. Y. 554; Gries v. Long Is. Home, 274 App. Div. 938.) The degree of care to be observed is measured by the patient’s physical and mental ills and deficiencies as known to the officers and employees of the institution (Scolavino v. State of New York, 187 Misc. 253, mod. 271 App. Div. 618, affd. 297 N. Y. 460; Shattuck v. State of New York, 166 Misc. 271, affd. 254 App. Div. 926; Zajaczkowski v. State of New York, 189 Misc. 299).
Claimant contends that the State, aware of decedent’s suicidal tendencies, in permitting her open-ward privileges should have exerted extraordinary precautions to prevent escape. In support of this theory, claimant cites Callahan v. State of New York (179 Misc. 781, affd. 266 App. Div. 1054). There the claimant’s first escape and attempted suicide were made in September, 1941 and the second in November, 1941, at both of which times she was accorded open-door privileges. Prior to that time, in March, 1941, the patient had been placed in an open ward, but this privilege had been withdrawn within one month when the patient had become restive. The court, in a decision dated February 27, 1943, held that the hospital authorities had ample warning concerning the patient’s escape and suicidal tendencies.
The instant claim is clearly distinguishable from that case. Here decedent’s first attempted escape was in September, 1928. In July of 1929, she attempted suicide while at home on parole. In September, 1929, she escaped from the hospital. In November, 1929, she again attempted suicide. From that time until 1960, *177 a period of 31 years, she made no further attempt to escape or to commit suicide. The Assistant Administrative Director of the hospital indicated that after that length of time decedent could not have been considered still to retain suicidal tendencies. There is no medical evidence to the contrary. The court finds that the State cannot be charged with warning of any escape or suicidal tendencies of decedent at the time of her escape in 1960, and was not under a duty, for the purpose of preventing suicide, to require her close observation and confinement. (Kardas v. State of New York, 24 A D 2d 789.) Further, the record is devoid of any evidence that the death of decedent was the result of suicide. The court may not speculate as to the circumstances surrounding her death.
The State has established a standard of care to which it has adhered. The assignment of decedent to an open ward was made in accordance with what is recognized to be the best mental health practice. No evidence has been introduced by claimant which would tend to contradict the efficacy or legality of such procedure. (Mahoney v. State of New York, 35 Misc 2d 138.) Further, claimant’s suggestion that the State failed to provide adequate guards in and about the hospital grounds is rejected because of the practice by the hospital of employing the use of the open-door policy.
The court finds further that the hospital authorities notified the police of the disappearance of decedent within a reasonable time.
Claimant has not introduced evidence sufficient to establish a prima facie case.
The motions made by the State at the close of claimant’s case and at the close of the entire case are granted.
The claim is dismissed.