GEORGE MOCHEN, JR., an Infant by His Father and Natural Guardian, GEORGE MOCHEN, SR., Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 51514.)

Fourth Department, February 22, 1974.

*Boniello, Gellman, Anton, Brydges & Conti (Ralph A. Boniello, III,* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Jeremiah Jochnowitz* and *Ruth Kessler Toch* of counsel), for respondent.

SIMONS, J.   This negligence case raises the question of what duty an institutionalized mentally ill patient has to exercise care for his own safety.

At the time of this accident George Mochen, Jr. was an infant, 17 years of age and had completed the equivalent of 11th grade in school.   George had apparently suffered from mental problems since birth.   His illness became serious at the age of seven and, starting at age nine, he had been hospitalized at various institutions for over five years.   On November 11, 1967, after attacking his parents, he was confined to Buffalo State Hospital in a closed ward with 77 other patients.

At about 12:35 A.M. on the morning of January 22, 1968, for the second time since being admitted to Buffalo State Hospital and for the 16th time during his various confinements, George tried to escape.   In some fashion he and another patient broke the iron bars on one of the ward windows, tied sheets together, and attempted to lower themselves 30 to 40 feet from the second story window to the ground.   The first patient succeeded but when George tried to lower himself by means of the bed sheets, he fell and sustained serious and painful injuries to his legs which required extensive hospitalization and have left him permanently crippled.   This action followed.   After hearing the evidence, the Court of Claims granted judgment for the State, holding that recovery was barred by George's contributory negligence.

The rules of negligence applying to mentally disabled defendants or severely disturbed plaintiffs are clear.   As defendants, the mentally disabled are held to the same objective standards of reasonable care as adults not suffering any disability (*Wil-*

*liams* v. *Hays,* 143 N. Y. 442; *Krom* v. *Schoonmaker,* 3 Barb. 647; *Shapiro* v. *Tchernowitz,* 3 Misc 2d 617; Prosser, Torts [3d ed.], § 129, pp. 1028–1030; Restatement, Torts 2d, § 283 B; 1 N Y PJI 112). There are understandable policy reasons for such a rule (see Restatement, Torts 2d, § 283 B, p. 17). Policy reasons aside, however, the rule is supported by logic. Since negligent conduct is always determined objectively by the reasonable man test and without regard to the subjective fault of the actor, there is little reason to inquire into the mental capacity of the defendant. The injury to the plaintiff is quite as real whether precipitated by a careless or clumsy defendant or by one who suffers some mental deficiency. Under any circumstances, the negligently injured plaintiff's right to be compensated does not depend upon the operation of the individual defendant's mind.

Conversely, when the conduct of an injured plaintiff, free of actual fault, is judged by an objective standard the result is frequently harsh and contradictory of the policy basis for the reasonable man test. Use of the objective standard impedes the injured party's ability to receive compensation rather than facilitates it. In the case of infants, this difficulty is overcome by the rule that an infant plaintiff's conduct is to be judged by standards of perception and judgment reasonable for children of that age, intelligence, experience, and development, not by the standards of the reasonable adult. Very young infants are considered *non sui juris* and incapable of negligent conduct respecting their own safety. Similarly, trial court decisions in New York involving institutionalized patients have consistently held mentally disabled plaintiffs free from contributory negligence when the disability is severe either because of retardation (*Surprenant* v. *State of New York,* 46 Misc 2d 190; *Doty* v. *State,* 33 Misc 2d 330 [mental age 8 to 9 years]; *Zajaczkowski* v. *State of New York,* 189 Misc. 299 [mental age 2½ years]; *Gaccione* v. *State of New York,* 173 Misc. 367 [mental age 3 to 4]), or serious mental illness grave enough to be classified as a psychosis (*Callahan* v. *State of New York,* 179 Misc. 781, affd. 266 App. Div. 1054; *Oliver* v. *State of New York,* 17 Misc 2d 1018; *Dowly* v. *State of New York,* 190 Misc. 16; *Gould* v. *State of New York,* 181 Misc. 884; and, see, generally *Hunt* v. *King County,* 4 Wn. App. 14 [drug induced psychosis]). The rationale is analogous to cases of *non sui juris* infants.

The New York courts, however, have not had occasion to formulate a rule for patients suffering some lesser degree of mental infirmity. This appeal presents that question and we

must decide what combination of perception and judgment a mentally disabled patient is required to exercise for his own care to avoid being charged with contributory negligence. We find no reason to adhere to the inelastic view that the disabled plaintiff is either " totally " insane or legally accountable for his own contributory negligence. Considering the present state of medical knowledge, it is possible and practical to evaluate the degrees of mental acuity and correlate them with legal responsibility. Within the broad spectrum of scientifically differentiated mental illnesses, there are intermediate levels of disability which may interfere with the perception of danger or the free exercise of judgment to avoid danger to such a degree that a mentally sick plaintiff suffering such an infirmity should be excused from responsibility for his own injury. The disability may fall short of psychosis or severe retardation and the act may be a voluntary judgment by the patient but still be the product of impulse or irrational behavior beyond his control. Under such circumstances, a plaintiff should not be held to any greater degree of care for his own safety than that which he is capable of exercising (see *DeMartini* v. *Alexander Sanitarium, Inc.,* 192 Cal. App. 2d 442; 1 N Y PJI 135; 2 Harper and James, Law of Torts, p. 927, § 16.8; 3 Warren's Negligence, § 2, p. 187; Ann. 91 ALR 2d 392; 65A C. J. S., Negligence, § 141; but, see, Restatement, Torts 2d, § 464).

This subjective approach was stated by the United States Supreme Court, in a case involving a 12-year-old boy, dull for his age, in *Baltimore & Potomac R. R.* v. *Cumberland* (176 U. S. 232, 238): " The defence of contributory negligence is one which admits, or at least presupposes, negligence on the part of the defendant, and the party in fault thereby seeks to cast upon the plaintiff the consequence of his own failure to observe the precautions which the circumstances of the case demanded. In determining the existence of such negligence, we are not to hold the plaintiff liable for faults which arise from inherent physical or mental defects, or want of capacity to appreciate what is and what is not negligence, but only to hold him to the exercise of such faculties and capacities as he is endowed with by nature for the avoidance of danger  *  *  *  the plaintiff is liable only for the proper use of his own faculties, and what may be justly held to be contributory negligence in one is not necessarily such in another."

A plaintiff whose judgment has been blunted by mental disability should not have his conduct measured by external standards applicable to a reasonable normal adult anymore than a physically disabled plaintiff is held to the same standards of

activity as a plaintiff without such a disability (see *Harris* v. *Uebelhoer*, 75 N. Y. 169 [blindness]; *Plunkett* v. *Brooklyn Heights R. R. Co.*, 129 App. Div. 572 [old age], affd. 198 N. Y. 568). It is appropriate that an injured party should be compensated for a defendant's error based upon objective standards of what an ordered society requires in the way of care towards others. It is not appropriate that an injured party be foreclosed from recompense by objective notions of care not related in any way to his fault or to his ability to avoid fault.

The evidence of the infant claimant's mental condition is found in the hospital record and the expert testimony. It appears that at the time of his admission to Buffalo State Hospital, he was classified by the staff doctors as " without mental disorder, psychopathic personality, asocial trends " and it was noted that he suffered from " minimal brain dysfunction ". His personal psychiatrist stated on the admission application that George " has never been well controlled — destructive, assaultive lately. Has been drinking heavily and sniffing glue. Assaulted mother and attempted to assault father ". George had threatened suicide and he had threatened to kill his father. His personal doctors' diagnosis was " sociopathic state vs. encephalopathic schizophrenia ". At the trial of this action, his doctor diagnosed George as a psychotic.

Both the claimant's doctor and those of the State agree that George could perceive the risk resulting from going out of the window. Indeed, similar to the many suicide cases, George's act here was intentional (cf. *Gioia* v. *State of New York*, 16 A D 2d 354). The doctors disagree, however, as to his ability, considering his mental condition, to make any reasonable judgment to decline the chance for escape. The claimant's doctor stated that George was helpless to resist the opportunity because of the severity of his mental illness. While capable of planning an escape, his emotional development was that of a young child and he was unable to comprehend the possible consequences from the attempt to exit the second story window. The frustration from what he considered unjust confinement was so intense that he reacted violently and impulsively and in his mind his elopement was an appropriate and reasonable exercise of judgment.

The State doctors recognized that he was severely ill. They acknowledged that because of mental illness he was callous, disobedient, stubborn, impulsive and sought to satisfy his own immediate needs without mature consideration of the consequences to himself. The symptoms they found, while consistent

with their medical diagnosis of psychopathic personality, are not inconsistent with a finding which would legally excuse George's conduct and permit recovery in a negligence action.

We recognize that on this record reasonable minds might differ in evaluating the infant claimant's conduct. The degree of illness and its effect on perception and judgment is a question of fact in all except the clearest cases. Nevertheless, we think that the evidence in the record is sufficient to show that he was not chargeable with contributory negligence (see *Codling* v. *Paglia*, 32 N Y 2d 330, 344–345; *Wartels* v. *County Asphalt*, 29 N Y 2d 372, 379–380; *Rossman* v. *La Grega*, 28 N Y 2d 300, 306 *et seq.*). The trial court's decision was contrary to the preponderance of the credible evidence (*McCauley* v. *State of New York*, 8 N Y 2d 938, 940). The judgment should be reversed and a new trial granted.

Marsh, P. J., Cardamone, Mahoney and Goldman, JJ., concur.

Judgment unanimously reversed on the law and facts, with costs and new trial granted.