CLARA PADULA, as Administratrix of the Estate of FRANK PADULA, Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 54694.)

PAUL MODAFFERI, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 56914.)

Third Department, December 8, 1977

### APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (J. Lawson Brown* and *Ruth Kessler Toch* of counsel), for appellant.

*Schiano & Poyzer (Charles A. Schiano* of counsel), for Clara Padula, respondent.

*Francis E. Dorn (Joseph Fallek* of counsel), for Paul Modafferi, respondent.

### OPINION OF THE COURT

SWEENEY, J. P.

The claimants seek damages for wrongful death (Padula) and personal injuries (Modafferi) alleging negligence on the part of the State. At the time of the alleged negligence Frank Padula and Paul Modafferi were residents of the Iroquois Rehabilitation Center. They were both certified heroin addicts, as were the other residents of the center. Under the jurisdiction of the State Narcotic Addiction Control Commission, the center was maintained as part of the State's program for the care, treatment and rehabilitation of drug addicts. The center was an open minimum security facility oriented to the community and without confining walls or fences. Pursuant to a commitment to the Federal Government all the residents were to work a certain number of months out in the field.

One of several rehabilitative training programs at the center included the use of a print shop located on the premises. On August 27, 1971 one of the residents was granted permission to enter the shop after hours to complete a printing job. During that evening Padula, Modafferi and other residents went to the shop and consumed some "Ditto" fluid mixed with water and Tang. "Ditto" fluid is a printing fluid containing methyl alcohol. The gallon container was in plain view on a work bench and clearly marked "Poison" and "May be fatal or cause blindness if swallowed". It was also marked with the well-understood symbol of a skull and crossbones. As a result of the consumption Padula died and Modafferi went blind.

After a bifurcated trial on the question of liability the court found the State negligent and Padula and Modafferi free from contributory negligence. This appeal ensued.

■ We agree with the Court of Claims' finding of negligence on the part of the State. Furthermore, we reject the State's contention that the incident occurred as result of a governmental decision for which immunity has not been waived by the State. An examination of the record demonstrates that the negligence on behalf of the State was not predicated on the decision of the State to conduct the rehabilitation program, but rather on the manner in which the program and course of treatment were executed. A resolution of the controversy is distilled to the remaining issue of contributory negligence.

Initially, we note that on such issue there is a sharp conflict in the medical testimony as to the ability of claimants to resist the use of any available, even harmful, substance which would provide a "mood change". One psychiatrist testified on behalf of claimants that hard core addicts were considered "emotional infants" and would use any chemical to produce a "mood change" and that they were powerless to resist the temptation. Another psychiatrist testified that claimant Modafferi had so great a "gratification need and motivation" to get high that he would deny the possibility that it might be harmful. There was contrary proof by a State psychiatrist who testified that in 1971 there was no single accepted standard treatment for drug addicts, but that the majority opinion among experts was that addicts were sophisticated and used discretion as to what they took and were not "emotional infants". He added that while an addict would take risks to get heroin that he might not take to get something else, he would nevertheless be careful not to harm himself. He further concluded that the addicts had "no emotional incapability to behave appropriately—with respect to a chemical" labeled as poisonous.

The record also establishes that neither claimant suffered from a mental disability; that claimant Padula never saw a psychiatrist and the psychiatrist who saw Modafferi after the incident did not treat heroin addicts and admittedly was not knowledgeable in the field of drug rehabilitation; that prior to acceptance at the Iroquois Center a prospective resident was subject to a strict screening procedure and had to be found psychologically sound, amenable to and interested in the

program, together with being trustworthy; and that the center had no supportive drug program.

Upon analyzing claimants' actions in light of all the facts and circumstances developed by the proof we conclude that claimants' acts were reasoned and deliberate. This is clearly evidenced by the testimony of one of the residents who was present during the incident. He testified that he and his friends saw the can of "Ditto" fluid and read the label. Claimant Modafferi admitted this resident said "We've got to be crazy to drink this." It is significant that it was not drugs that were being consumed, but alcohol, clearly marked as poisonous. Our determination is thus further distilled to the critical issue of whether claimants were unable to resist drinking this poisonous liquid as found by the Court of Claims. In urging affirmance claimants rely heavily, as did the Court of Claims, on *Mochen v State of New York* (43 AD2d 484). We believe such reliance to be misplaced. The *Mochen* case dealt with an infant admittedly suffering from mental disability. He was diagnosed to be psychotic. Padula and Modafferi were not suffering from any mental disability. In our view, it would be an improper and improvident extension to apply the principle enunciated in *Mochen* to the present case. This is particularly so in view of the fact that in most instances, as demonstrated by the records, these claimants could manifestly make reasonable determinations and control their actions. Such is evidenced by their daily activities in this somewhat unrestricted environment. To conclude that these claimants were unable to resist the temptation of consuming "Ditto" fluid is unrealistic, highly speculative and not supported by this record.

As this court has recently stated: "In a nonjury case, this court's inquiry is not limited to whether the findings were supported by some credible evidence. If it appears on all the credible evidence that a different finding or a finding different from that of the court is not unreasonable, then this court must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from such testimony *(Spano v Perini Corp.,* 25 NY2d 11). It is within the power of this court to grant the judgment which upon the evidence should have been granted by the trial court" *(Shipman v Words of Power Missionary Enterprises,* 54 AD2d 1052, 1053). We are of the view that the weight of the credible evidence establishes that each claimant was sufficiently in control of his will to resist the temptation

of consuming the "Ditto" fluid and we so find. We, therefore, conclude upon the evidence that the claims should have been dismissed.

The judgments should be reversed, on the law and the facts, and claims dismissed, without costs.

LARKIN, J. (concurring). I concur with the majority except that I find no negligence on the part of the State.

KANE, MAHONEY and HERLIHY, JJ., concur with SWEENEY, J. P.; LARKIN, J., concurs in the result only in a separate opinion.

Judgments reversed, on the law and facts, and claims dismissed, without costs.