SUE T. LAWLER, as Administratrix of the Estate of BARBARA A. E. LAWLER, Deceased, Respondent, *v.* NUCASTLE MOTORS LEASING INC., et al., Appellants, et al., Defendants.

Second Department, December 28, 1970.

*Bower, O'Connor & Gardner* (*Benjamin H. Siff* of counsel), for appellants.

*Emile Z. Berman* and *A. Harold Frost* (*Sheila L. Birnbaum* of counsel), for respondent.

SAMUEL RABIN, J. In this appeal from a judgment in a wrongful death action involving the death of the plaintiff administratrix' 23-year-old daughter, appellants do not in any manner contest the jury's finding of liability. The sole questions raised on this appeal relate to damages, more specifically, (1) whether it was error for the trial court to bar proof of the plaintiff's remarriage and (2) whether the jury's verdict of $55,000 was excessive.

The salient facts are not in dispute: The plaintiff's 23-year-old daughter was a passenger in an automobile owned by the defendant Nucastle Motors Leasing Inc. and operated by the defendant O'Toole (the appellants) when the vehicle had some contact with a second vehicle owned and operated by the defendants Rodolico, resulting in the decedent's being thrown from her car. She died several hours after the accident, but the cause of action for conscious pain and suffering was discontinued at the outset of the trial, leaving only the wrongful death action to be litigated. Prior to the taking of any proof, the plaintiff's attorneys moved to preclude the defendants from offering any proof upon the trial of the plaintiff's remarriage. The motion, though vigorously opposed by all the defendants, was granted, thereby barring any evidence of the plaintiff's remarriage.

At the trial the plaintiff testified, *inter alia,* that at the time of her daughter's death, on April 21, 1966, she had been divorced from her former husband, the decedent had lived at home with her and only the two of them lived at their apartment at that time, the decedent was a legal stenographer earning approximately $125 a week [the employment records indicated her salary as $110 a week] and of that sum she voluntarily contributed $50 a week toward the running of the household up to the time of her death. The plaintiff further testified that she herself was not employed on the date of the accident and from the time of her marriage to her former husband up to her daughter's death she had never been employed. It was conceded that the plaintiff was 44 years of age at the time of her daughter's death. The jury returned a verdict in the plaintiff's favor in the sum of $55,000.

The threshold question on this appeal is whether it was error to bar proof of the plaintiff's remarriage. In my view, such proof of remarriage was properly ruled inadmissible by the trial court. It is fundamental that the question of damages in wrongful death actions has always been a highly speculative one. To admit proof of remarriage, under the circumstances here present, would only contribute to the speculative nature of such damages. This court has clearly held that proof of remarriage of a

surviving spouse after the wrongful death of the other spouse is not admissible in such actions. In *Rodak* v. *Fury* (31 A D 2d 816, 817) we unequivocally stated: "It is a firmly established principle that the remarriage of a widow after the death of her husband is not taken into consideration in computing the damages recoverable for the wrongful death of the husband (*Murmann* v. *New York, New Haven & Hartford R. R. Co.*, 233 App. Div. 446, revd. on other grounds 258 N. Y. 447; *Lees* v. *New York Cons. R. R. Co.*, 109 Misc. 608, affd. 193 App. Div. 882; *Luddy* v. *State of New York*, 50 Misc 2d 992; see, also, 7B Warren's Negligence, Damages, § 6.25, subd. [1], pp. 77–82; Speiser, Recovery for Wrongful Death, § 6:12, and cases cited therein)."

Indeed, the appellants at bar freely admit that proof of remarriage of a widow of one killed in an accident is inadmissible, but argue that that rule should not be applied to a case where the beneficiary is not a spouse but is a parent suing for the death of a child. The appellants contend that in the former case it was the defendant's wrongdoing that rendered the spouse a widow and, if the surviving spouse chooses to obtain solace in another marriage, that fact should not inure to the benefit of the wrongdoing defendant whose conduct had created the situation leading to the remarriage. It is urged that such a rationale does not apply where the beneficiary is not a spouse but a parent suing for a child's death.

While it cannot be denied that a certain distinction does arise from the different relationships between the decedents and the beneficiaries in these two situations, it is my opinion that the overriding rationale for excluding evidence of remarriage is identical whether the beneficiary of the action be a spouse or a parent. I perceive the dominant consideration for the exclusion of such evidence to be its highly speculative nature and this basis for exclusion exists irrespective of the relationship between the beneficiary and the decedent. At bar, had proof of the plaintiff's remarriage been admitted, would not the jury, to some extent at least, have speculated, *inter alia*, regarding (1) the earning power of the plaintiff's present spouse, (2) the length of time such earning power would continue, (3) the possibility that the present husband would become an invalid or for some reason be unable to work and (4) the possibility of a severance of the marital bond. The wrongful death statute does not contemplate the incalculable collateral issues that would result from the rule suggested by the appellants. In short, I conclude that whether a spouse remarries or the parent of a deceased child remarries is quite immaterial, for in either case to permit the jury to assess the remarriage in pecuniary terms

is to permit the jury to engage in thought processes bordering on pure speculation. This court's holding in *Rodak* v. *Fury* (*supra*) ought to be extended to the facts at bar.

The evidence-admissibility question aside, the remaining claim relates to the alleged excessiveness of the jury's verdict. The decedent was 23 years old and living at home with her mother. Only the two of them shared the apartment, as the plaintiff's other two children no longer resided at home. At the time of her death the decedent was earning $110, or perhaps as much as $125, a week as a legal stenographer and of that sum she voluntarily contributed $50 a week toward the running of the household.

There is nothing in this record to suggest that the decedent had any legal obligation to support her mother. By awarding the plaintiff $55,000 the jury impliedly determined that the decedent's voluntary contributions of $2,600 per annum [$50 a week] to the household would have continued for approximately 21 years beyond the date of the decedent's death at which time this 23-year-old girl would have been 44 years old. In my view it would have been proper for the jury to consider that in the normal course of events the decedent would have long since been married and contributing to her own family (see *Breckir* v. *Lewis,* 21 A D 2d 546). I find the verdict excessive under the circumstances here present and conclude that the sum of $30,000 represents a more reasonable estimate of the extent of the plaintiff's financial deprivation by reason of her daughter's wrongful death.

Accordingly, the judgment should be reversed insofar as appealed from, on the law, and, as between the parties to this appeal, the action severed and a new trial granted, with costs to abide the event, unless, within 30 days after entry of the order hereon, the plaintiff shall serve and file in the office of the Clerk of the trial court a written stipulation consenting to reduce from $55,000 to $30,000 the amount of the verdict in her favor and to the entry of an amended judgment accordingly, in which event the judgment, as so reduced and amended, should be affirmed insofar as appealed from, without costs. The findings of fact below should be affirmed.

MARTUSCELLO, J. (dissenting). The plaintiff, a divorcee, brought this action as sole beneficiary to recover damages for the wrongful death of her 23-year-old daughter. The decedent lived with the plaintiff and contributed to her support. At the outset of the trial the plaintiff's attorneys moved to preclude the defendants from offering any proof upon the trial of the remarriage of the plaintiff. The court granted the motion.

In my opinion, the exclusion of proof as to the mother's remarriage was error.

I am well aware of, and agree with, the long line of cases in this State, and indeed in the vast majority of States, which hold that the remarriage of a widow after the death of her husband cannot be taken into consideration in computing the damages recoverable for the wrongful death of the husband (*Rodak* v. *Fury*, 31 A D 2d 816; *Murmann* v. *New York, New Haven & Hartford R. R. Co.*, 233 App. Div. 446, revd. on other ground, 258 N. Y. 447; see, contra, *Sipes* v. *Michigan Cent. R. R. Co.*, 231 Mich. 404; *Jensen* v. *Heritage Mut. Ins. Co.*, 23 Wis. 2d 344). In such a situation, however, the negligence of the defendant results in the death of a spouse, and the fact of remarriage should not inure to the defendant's benefit. However, in the case at bar, where the defendant's negligence results in the death of an adult child, it would seem apparent that the parent's remarriage is not directly related to the defendant's negligence.

Moreover, while a wrongful death action vests at the time of death, damages are not always necessarily fixed at that time. In order to reduce the speculative nature of the damages in wrongful death actions, the courts have held that, where one who has been widowed because of a wrongful death dies after the commencement of the wrongful death action but prior to trial, the widow's estate is entitled only to damages sustained between the time of her husband's death and her own death (*Sider* v. *General Elec. Co.*, 238 N. Y. 64, 69). The plaintiff herein had no legal claim for support by the decedent, an adult child (see Domestic Relations Law, § 32, former subd. 6, which subd. was repealed in 1967 [L. 1967, ch. 184, § 2] after the decedent's death and prior to the trial). When the deceased in a wrongful death action is one who is under no legal obligation to provide support for the beneficiary during life, the deceased's voluntary disposition to do so is of essential importance to the jury in determining pecuniary loss (*Loetsch* v. *New York City Omnibus Corp.*, 291 N. Y. 308; *Breckir* v. *Lewis*, 21 A D 2d 546). It appears to me that the fact of remarriage of a parent substantially reduces the speculative nature of the period of time a 23-year-old child would be disposed to make voluntary contributions toward the maintenance of the parent's household. This highly relevant testimony should have been allowed into evidence and considered by the jury in determining damages.

For the foregoing reasons, the judgment should be reversed insofar as appealed from and, as between the parties to this appeal, the action should be severed and a new trial granted.

Hopkins and Munder, JJ., concur with Rabin, J.; Martuscello, J., dissents and votes to reverse the judgment insofar as appealed from and, as between the parties to this appeal, to sever the action and grant a new trial, in an opinion, in which Christ, P. J., concurs.

Judgment reversed insofar as appealed from, on the law, and, as between the parties to this appeal, action severed and new trial granted, with costs to abide the event, unless, within 30 days after entry of the order hereon, plaintiff shall serve and file in the office of the Clerk of the trial court a written stipulation consenting to reduce from $55,000 to $30,000 the amount of the verdict in her favor and to the entry of an amended judgment accordingly, in which event the judgment, as so reduced and amended, is affirmed insofar as appealed from, without costs. The findings of fact below are affirmed.