OPINION OF THE COURT
Arthur D. Spatt, J.
The issue presented in this action involving the wrongful death of a mother is whether a surviving infant child’s right of recovery is lost or diminished by reason of his being adopted subsequent to his mother’s death.
BACKGROUND
Deborah Turchen died on February 17, 1975, shortly after the birth of her infant son Scott, now known as Scott Alberino. Her husband, Harvey D. Turchen, the natural father of Scott, is presently in a mental institution. Scott has lived with his aunt and uncle, Mr. and Mrs. Richard F. Alberino, since he was about one month old, and was legally adopted by the Alberinos in June, 1976, when he was one year old. This medical malpractice action to recover damages for the wrongful death of Deborah Turchen was commenced in early 1977.
*627 This case was assigned to me for trial, and the question of the effect of Scott’s adoption was raised by the parties prior to opening. The following questions must be answered: Are the facts concerning the adoption admissible in evidence? Does the adoption totally preclude Scott from any recovery in this case? Is the adoption a factor which the jury may take into consideration in determining the question of pecuniary loss of the infant? Or is the fact of the adoption immaterial and totally inadmissible?
In view of the importance of this question insofar as the damages portion of this case is concerned, and the material effect of its resolution on the trial and/or the final result thereof, the court, with the consent of all counsel, disbanded the jury, permitted briefs to be filed and agreed to render a pretrial decision which could be reviewed on appeal by any party prior to trial.* It was further agreed that after this determination there would be a conference prior to any decision to appeal.
CONTENTIONS
Plaintiff contends that the infant’s right of recovery is unaffected, in any manner, by his subsequent adoption. Further, plaintiff asserts that the question of an adoptive child’s right to inherit from the estate of a natural parent is immaterial to the issues in this wrongful death action. Stated simply, plaintiff contends that the rule that an adopted child loses his right to inherit from his natural parent “is beside the point”.
On the other hand, the defendants represented by the firm of Bower & Gardner, Esqs., contend that they may properly introduce evidence that the economic loss incurred by decedent’s infant son has been mitigated by the infant son’s subsequent adoption. Said defendants contend that this adoption presents the jury with a fact of realistic certainty in an area of damages which is frequently uncertain and speculative. Further, they assert that the pecuniary damages are not fixed or vested at the moment of *628 death, but may be affected by subsequent developments such as, in this case, the adoption of Scott.
The thrust of the argument advanced by the defendants represented by the firm of Martin, Clearwater & Bell, Esqs., is that the inheritance rights of the adopted child with regard to his natural parent terminate upon the making of the order of adoption (see Domestic Relations Law, § 117) indicating a legislative intent to cut off the right of Scott Alberino to recover in this action involving his mother’s wrongful death. Therefore, say these defendants, the facts of the adoption are admissible in evidence so as to bar any claim for pecuniary loss by Scott.
DETERMINATION
The statutory genesis of the wrongful death action is to be found in the Estate, Powers and Trusts Law (EPTL). EPTL 5-4.1 provides that the personal representative of a decedent “who is survived by distributees” may bring a wrongful death action. EPTL 5-4.4 states that the damages recoverable in a wrongful death action “are exclusively for the benefit of the decedent’s distributees”.
The proceeds of a wrongful death action do not pass through the estate but go directly to those persons found to have been supported by the decedent. (Matter of Diaz, 102 Misc 2d 817.)
The distributees of decedent, who are the beneficiaries of the wrongful death action, are determined as of the date of her death. In Pitkin v New York Cent. & Hudson Riv. R.R. Co. (94 App Div 31, 35-36) the rule was stated as follows: “The right to these damages is a right of property which accrues at the moment of the negligent killing, and at such moment becomes vested in the beneficiary for whose benefit the action may be maintained.” (See, also, Woodard v Pancio, 65 AD2d 923, 924 [“and the date of death is the date for determining such distributees”]; 1 NY PJI 2d 684 [“The beneficiaries of the action are determined at the moment of decedent’s death.”].)
Further, it is well established that the “pecuniary loss” arises as of the date of the decedent’s death, and is not affected by subsequent developments, except when the event has definitely fixed what was only problematical and *629 uncertain and such event is unrelated to the occurrence at issue, such as the case of the death of a beneficiary before trial. (See Woodard v Pancio, supra; Sider v General Elec. Co., 203 App Div 443, affd 238 NY 64.) Stated otherwise, when a verdict is rendered, it measures the damages as of the date of death (Murrmann v New York, New Haven & Hartford R.R. Co., 233 App Div 446, revd on other grounds 258 NY 447), except for a situation such as the death of a beneficiary before the trial.
A review of the modern cases leads to Rodak v Fury (31 AD2d 816), wherein it was held that proof that a surviving spouse has remarried may not be taken into consideration in computing the damages recoverable for the wrongful death of the spouse and such evidence is inadmissible. (See, also, Ciaccio v Housman, 97 Misc 2d 741; 88 ALR3d 928, §§ lb, 2; 1 Speiser, Recovery for Wrongful Death 2d, §6:12.)
This rule was further extended in Lawler v Nucastle Motors Leasing (35 AD2d 450), in which the court held that in an action for the wrongful death of a child, proof of remarriage of a parent beneficiary is also inadmissible. More importantly, in Lawler, the court discussed the basis for the rule rendering inadmissible such postdeath developments. In Lawler, the defendants contended that Rodak was distinguishable in that there it was the defendant’s wrongdoing that rendered the spouse a widow, which created the situation leading to the remarriage, while in Lawler, which involved the death of a child, the same rationale did not apply since defendant’s wrongdoing had nothing to do with the father’s subsequent remarriage. The majority, guided by the principle of “speculative damages” held as follows (Lawler v Nucastle Motors Leasing, supra, pp 452-453): “While it cannot be denied that a certain distinction does arise from the different relationships between the decedents and the beneficiaries in these two situations, it is my opinion that the overriding rationale for excluding evidence of remarriage is identical whether the beneficiary of the action be a spouse or a parent. / perceive the dominant consideration for the exclusion of such evidence to be its highly speculative nature and this basis for exclusion exists irrespective of the relationship *630 between the beneficiary and the decedent * * * The wrongful death statute does not contemplate the incalculable collateral issues that would result from the rule suggested by the appellants. In short, I conclude that whether a spouse remarries or the parent of a deceased child remarries is quite immaterial, for in either case to permit the jury to assess the remarriage in pecuniary terms is to permit the jury to engage in thought processes bordering on pure speculation. This court’s holding in Rodak v. Fury (supra) ought to be extended to the facts at bar.” (Emphasis supplied.)
The dissent in Lawler by Justice Martuscello is based upon his view that in the Rodak situation of a widow remarrying, “the negligence of the defendant results in the death of a spouse, and the fact of remarriage should not inure to the defendant’s benefit. However, in the case at bar, where the defendant’s negligence results in the death of an adult child, it would seem apparent that the parent’s remarriage is not directly related to the defendant’s negligence.” (Supra, p 454.)
The reasoning behind the Rodak-Lawler exclusion of postdeath event is twofold. First, the fact of remarriage should not inure to the benefit of the wrongdoer, inasmuch as his negligence was the cause of the subsequent remarriage. Second, it would be too speculative to permit the jury to consider the subsequent remarriage.
In Lawler, the majority and the dissenting opinions disagreed as to which of the two reasons cited above are controlling. In this case, however, both theories are fully applicable. The negligence of the defendants, if proved was the direct cause of the subsequent adoption and it would be sheer speculation for the jury to be permitted to compare the pecuniary value of the natural and the adoptive parents.
The facts in the instant case present a far more persuasive predicate for exclusion than in Lawler. Whether under the majority “speculative” rule or by the “negligence related” theory of the dissent, this adoption cannot be considered by the jury on the issue of damages.
Here, it cannot be disputed that the adoption was made necessary by the death of the decedent mother alleged to be *631 caused by the negligence of the defendants. Unquestionably, the adoption was the direct result of the decedent’s death, and would not have taken place if the mother had not died. Stated simply if the mother would have been alive, there would have been no adoption.
The case closest to the facts herein which also involves adoption is Luddy v State of New York (30 AD2d 993, affd 25 NY2d 773), in which the decedent husband was survived by his wife and seven infant children. The widow remarried and the children were adopted by her new husband. Held: “The proof of the widow’s remarriage and of the adoption of the children by her husband was not competent to mitigate the damages.” (30 AD2d, at p 994.) (See, also, Lees v New York Cons. R.R. Co., 109 Misc 2d 608, affd 193 App Div 882; Restatement, Torts 2d, Damages, §925.)
Nor does section 117 of the Domestic Relations Law alter the infant’s rights which, for the purposes of this lawsuit, vested and were fixed at the moment of his mother’s death. Section 117 terminated the adoptive child’s rights in the estate of his natural parent “[a]fter the making of an order of adoption” and can have no effect upon the child’s rights as to a parent who was already deceased at the time of the adoption.
Indeed, the section 117 rule is really irrelevant to the issues in this case. The infant here seeks to recover on his own right for his pecuniary loss as a distributee at the time of his mother’s death. His right of recovery accrued to him upon his mother’s death and prior to the order of adoption. Hypothetically, if the mother’s death did not give rise to a cause of action for wrongful death and the infant was subsequently adopted, would not the infant be entitled to inherit from his predeceased mother’s estate? How much more persuasive is the instant case where the mother’s death was allegedly caused by the negligence of these defendants.
Moreover, this infant was adopted when he was one year old. By virtue of his age, he could not have consented to his adoption and, in fact, knew nothing about it. In fairness, this involuntary adoption as to the child, mandated by his *632 mother’s death, cannot serve to take from him his rightful pecuniary loss.
The defendants’ contention that barring the facts of adoption from the jury “would lend an air of unreality to the trial” is without merit. There would be here no more “air of unreality” than in the case of the widow who married a millionaire but is nevertheless entitled to her pecuniary loss as of the time of death. In this court’s view, there is greater legal and moral justification in withholding the evidence of this adoption caused by the events in this case.
Accordingly, this court rules that the facts concerning the adoption of Scott Alberino are not admissible at the trial of this wrongful death action. The adoption is irrelevant to the jury’s consideration and, as in Rodak (31 AD2d 816, supra), will not be revealed to the jury either on voir dire or during the trial. However, on voir dire, defense counsel may inquire of prospective jurors whether they know or are related to persons having the names of Deborah Turchen, Harvey Turchen and Mr. or Mrs. Richard F. Alberino.
A conference pursuant to stipulation and for all purposes is set down for November 13, 1981 at 9:00 a.m. at my chambers.

 This method of a pretrial determination of a vital question which will substantially affect both the admissibility of evidence and the ultimate result has been previously sanctioned. (See Bartilucci v Polyclinic Hosp., 71 AD2d 842; Reed v County of Schoharie, 51 AD2d 499.)